THEODORE BRUNING *v.* NEW ORLEANS CANAL AND BANKING COMPANY.

The apparent servitude of passage or right of way is an appurtenance of the property sold, and any sale implies, without its being expressed, a warranty against acts of the vendor, that would prevent or interfere with the full enjoyment of the thing sold.

Any citizen aggrieved by a public nuisance, is entitled to an action of damages against the offending party, especially if such nuisances involves also the breach of a private warranty.

Usurpations and wrongs to private rights of property, cannot be justified by considerations of benefit to commerce, and the right of expropriation of private property can only be exercised according to the forms of law.

APPEAL from the Fourth District Court of New Orleans, *Reynolds*, J. *Larue & Whitaker*, for plaintiff and appellee. *Benjamin, Bradford & Finney*, for defendants.

BUCHANAN, J. On Wednesday, the 23d day of April, 1845, and the succeeding days, the defendants offered for sale at public auction at the Arcade Exchange in Magazine street in New Orleans, through *Hewlett & Cenas*, auctioneers, 400 lots of ground situated in the continuation of the suburbs Saulet, Lacourse and Delord, in the rear of the city and adjoining the canal of the defendants on both sides. This auction sale was made according to lithographed

plans, which were exhibited to the bidders and which are in evidence. Two of those lots, being those numbered one and two, in the square bounded by Florida Landing, Derbigny, Claiborne and Cypress streets. Lot No. 1, forming the corner of Florida Landing and Claiborne street; and lot No. 2, fronting on Florida Landing adjacent to lot No. 1, were adjudicated (with others) to *George W. Martin.* The defendants, in a notarial act of sale passed before *McCay,* notary, on the 1st of May, 1845, in pursuance of said adjudication, conveyed to said *Martin* the said two lots of ground, by the above description, together with all the privileges and appurtenances thereunto belonging.

The lots thus sold, having come, by several mesne conveyances, into the possession and ownership of *Richard W. Collins,* were by him sold, on the 14th May, 1849, to the present plaintiff, together with all the appurtenances unto said lots belonging, or in anywise appertaining, with a special transfer to the plaintiff of all the vendor's rights and actions of warranty against all the former proprietors of the property conveyed.

The premises thus purchased have been improved by plaintiff, who has erected thereon a dwelling house and grocery, and has ever since occupied the same.

The evidence establishes without dispute, that the defendants, long subsequently to the sale made by them to *Martin,* as aforesaid, and about the time that plaintiff acquired the property, have enlarged their canal at the junction of Claiborne street and Florida Landing, by excavating a basin in the form of a half moon, on the northern margin of the canal, and extending across the whole width of Florida Landing, which has thus been appropriated by defendants to their own use, by converting it from land into water, and from a public highway, as represented on the plan by which they sold the property now occupied by plaintiff, into a navigable canal and harbor for vessels. This is not only an usurpation of soil dedicated to public use, but a manifest violation of the defendants' obligation of warranty under the public sale of the 23d of April, 1845.

The dedication of the soil of Florida Landing, as far back from the river as the plaintiff's property, and much farther, to the public use as a street, was made by defendants in the most solemn and authentic form. The recitals in the deed to *Martin* show, that the lots sold formed part of a tract of land purchased by defendants from *Madame Louise Delord Sarpy,* wife of *Dominique François Burthe,* by act before *Stringer,* notary, on the 28th of May, 1831 ; and that the division of the tract into squares and streets, according to the description in the deed, was by plan made by *George T. Dunbar,* surveyor of the Second Municipality, on the 1st of February, 1845, which is adopted by the vendors, and of which plan the lithographic plans in evidence are extracts. Those lithographs and the parol evidence on trial, show moreover that Florida Landing is a prolongation or continuation of Julia street towards the swamp in the rear of the city. The entire obstruction of Florida Landing by the defendants, therefore, impedes necessarily, the drainage of the city, by cutting off the discharge of all the water that is carried down the gutters of Julia street ; for it is proved the defendants do not allow this water to drain into their canel. Accordingly, the witnesses on both sides prove that the water which comes down Julia street in rains is thrown off, laterally, through Magnolia, Vine and Willow streets, into Cypress street, which is thus made to drain two streets instead of one, and that the consequence is an inundation

and a stagnation of water, highly prejudicial to the health, comfort and interest of the citizens in the neighborhood of Florida Landing.

The city council, as guardians of the public property, was memorialized many years ago by individuals who represented that the public rights were invaded by the excavation of the basin in question; but the committee on streets and landings, to whom the subject was referred, having reported unfavorably upon the memorial, nothing was done.

We are not disposed to say, because the decision of this cause does not require it, whether the initiative in the abatement of the nuisance of an obstruction of the public highway, is exclusively reserved to the city council, or whether proceedings might not be commenced for that purpose by individual citizens who were aggrieved by the nuisance. But we assert, without hesitation, the right of any citizen so aggrieved, to an action in damages against the offending party, especially if, as in the present case, the public nuisance involves also the breach of a private warranty. A street is every valuable to the proprietor of land adjoining it, as a passage for ingress and egress to his property. The defendants sold to the author of plaintiff's title, the land with all its appurtenances. As an illustration of the meaning of this phrase, another deed by these defendants to *John Hoey* was given in evidence, conveying other lots in the same square fronting on Florida Landing, at the corner of Derbigny street. The defendants sell to *Hoey* the lots, according to *Dunbar's* plan, *together with all the rights, ways, privileges and appurtenances thereunto belonging*, or in *anywise appertaining*.

The description of what was sold is here more full, but it is substantially the same. The apparent servitude of passage or right of way, is clearly an appurtenance of the property; and it is scarcely necessary to add, that in Louisiana every sale implies, even without its being expressed, a warranty against acts of the vendor that would prevent or interfere with the full and perfect enjoyment of the thing sold.

The learned counsel for the defendants argues that his clients were justified in appropriating Florida Landing as they have done, because, by the ninth section of their charter, (Session Acts 1831, page 44,) they had the right of expropriating land to the width of one hundred and twenty feet on each side of their canal, which (by the 8th section) was to be sixty feet wide; and because, by the 26th section of the charter, the land thus acquired by forced sale or otherwise to the extent of 120 feet on each side of the canal, shall belong to the State of Louisiana in thirty-five years from the date of the charter.

It seems to have escaped the attention of the learned counsel, that the ninth section expressly reserved in its concluding clause to the proprietors of lands appropriated, a right of communication with the canal, *and with the said route, and this in the whole extent of said lands, which shall be considered as riparious to said canal.*

The right of way is here expressly reserved to the adjacent proprietors, even over lands expropriated; and that, to the magnificent extent of one hundred and twenty feet. For the charter says, that their lands shall be considered *riparious;* that is to say, the intervening space between them and the canal (120 feet) is assimilated to the banks of a navigable river, of which a prominent legal characteristic is, that their use is public. C. C. 440. Apart from this consideration, however, the argument derived from the ninth section of the

charter, has no force, because the defendants do not occupy towards plaintiff the attitude of a claimant of land for the purposes of their charter under that section.

The charter granted by the Legislature on the 5th of March, 1831, obliged the corporation to construct, *within the space of six years from the passage of the act*, a canal of certain dimensions from some part of the city or suburbs of New Orleans, above the Gravier canal (Poydras street) to Lake Pontchartrain, with one or more basins, and a sufficient breakwater to facilitate the ingress and egress of vessels; and for the accomplishment of this object, the corporation was authorized to acquire lands adjoining the route of the canal by contract, or by a certain form of expropriation therein prescribed.

Now this record shows us that in May, 1831, two months after the passage of the charter, the defendants acquired by contract from *Mrs. Burthe*, land, including the lots now possessed by plaintiff, adjoining the route of the canal, to a much greater extent than 120 feet on both sides of it ; through which lands thus acquired, we must presume that the canal was dug within the six years succeeding the charter, or before the 5th of March, 1837; for otherwise the charter, by its terms, would have been forfeited. Eight years after the completion of the canal, the defendants carve sundry lots and streets out of the land acquired by them from *Mrs. Burthe*, leaving a margin for a landing and public street on the north side of the canal, (Florida Landing,) of 108 feet, according to the witness *Harrison*.

Three years after this operation, or eleven years after the completion of the canal, and seventeen years after the acquisition of the 120 feet (and upwards) from *Mrs. Burthe*, the defendants commence excavating the soil of Florida Landing for the basin or half moon, of which the plaintiff complains. What relation has this to the power and extent of expropriation vested in the company by the ninth section of its charter ? That power had been exercised and exhausted. Besides, it may be very reasonably objected that, if this be an expropriation under the charter, the forms required by the ninth section have not been observed. The company required the land, and its servants simply took it.

Much evidence has been taken in relation to the benefit to commerce of the half moon in question. This we regard as entirely foreign to the matter at issue in this suit. Usurpations and wrongs are not to be tolerated upon any such considerations. We recognize no power, either in the defendants or in this court, to take money out of one man's pocket and put it in another's, unless in the enforcement of legal obligations, according to the forms of law.

We think the judgment appealed from has done justice. It is, therefore, affirmed, with costs.