No. 11,321.

STATE OF LOUISIANA EX REL. MRS. PENELOPE A. VIOLETT ET AL. VS. FREDERICK D. KING, JUDGE OF THE CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS.

1   Where an injunction does not order the closing up of defendant's business but restrains him simply from carrying it on in a manner resulting in an alleged continuing nuisance to the health and comfort of plaintiff and his family, it should not be set aside on bond, as the effect of the dissolution is to authorize and permit the defendant to continue to do the act complained of and restrained during the pendency of the suit.

2.   The law does not limit its protection to parties who are aggrieved in dollars and cents by a continuing nuisance. The fact that the plaintiff in injunction does not own the premises which he occupies, but occupies them as tenant does not withdraw from him and his family the protection of the law against a nuisance affecting their health and comfort.

3. The failure of the owner of the property who has joined with the tenant in an application for an injunction to perfect the injunction by giving bond does not destroy the right of the tenant,who is before the court standing on his own rights, and not depending upon those of the owner, to the benefit of the injunction, when he has himself given bond.

A PPLICATION for Mandamus.

Farrar, Jonas & Kruttschnitt for the Relators.

Respondent in propria persona.

The opinion of the court was delivered by

NICHOLLS, C. J. The relators are Mrs. Penelope A. Violett, widow of the late William A. Violett, and Atwood Violett.

They allege that they instituted suit in the Civil District Court for the parish of Orleans, in which suit they represented that relator, Mrs. Violett, was the owner, and relator, Atwood Violett, the occupant of certain premises in their petition described, and that F. Johnson & Son, a commercial firm domiciled in the city of New Orleans, and the individual members thereof, had established a livery stable adjoining the property in said petition described, in which livery stable they kept a large number of horses; that from said livery stable arose the most offensive smells, and that the same caused swarms of insects to infest the premises belonging to said Mrs. Violett and occupied by Atwood Violett, and that said smells were so offensive and disgusting as to subject relator, Atwood Violett, the occupant of said premises, to the most intolerable annoyance; that in said petition relators further represented that said livery stable so located in the vicinity of said dwelling house as aforesaid, as also of other dwelling houses, and in a neighborhood of dwelling houses, and the business of conducting said livery stable at said location in the manner in which it was conducted constituted a nuisance which relators were entitled to have suppressed, and praying for an injunction in the premises. That upon said petition an order was duly entered ordering an injunction to issue in the premises as by relators prayed for. That said injunction duly issued; that the defendants therein subsequently took a rule upon relators

to show cause why said injunction should not be dissolved upon bond; that said rule was, after hearing, made absolute by the Civil District Court, and defendants allowed to bond said injunction, all of which, with other necessary particulars, it was averred would more fully appear from the record of said suit now pending in the Civil District Court, which is referred to as part of their petition, and which in the original or duly certified copy thereof would be presented to the Supreme Court at the hearing. That the injunction prayed for was not against the conducting of said livery stable, provided the same be conducted in such a manner as not to inflict a nuisance upon relators, but merely enjoined said defendants from continuing to conduct said livery stable in the manner and form in which they did conduct the same—that is to say, in such a manner as to give rise to the most offensive and disgusting smells, rendering the dwelling house of relators untenantable. That by said order to bond an irreparable injury was and is inflicted upon relators, and they did seasonably apply to the court for a suspensive appeal from said order, but that the court, through Frederick D. King (the judge of Division "B," thereof, sitting in lieu of the Hon. George H. Theard, judge of Division "E" thereof, absent on leave, and to which Division "E" said cause had been allotted), who tried said rule and to whom said application for an appeal was made, has wrongfully refused and declined to render an order of appeal in the premises. They prayed for the issuing of an alternative writ of *mandamus* to the judge of Division "B," sitting in place of the judge of Division "E," commanding him to grant relators a suspensive appeal [*nunc pro tunc* as of date of August 4, 1893—date when application was made therefor] from the order allowing the dissolution of the injunction on bond.

An alternative writ of *mandamus*, having issued, the district judge has filed an answer in which he declares that on the trial of the rule to bond the injunction it appeared that no irreparable injury resulted or could result from the act complained of, and that the damage complained of could be made good or repaired by the payment of money. That it appeared said premises of relator were leased and that the only loss that could result was a loss to the tenant appreciable in money. That the suit was brought jointly by Mrs. Penelope A. Violett as owner of the property and Atwood Violett as tenant of the property—that no injunction had been issued on behalf of Mrs. Pen-

State ex rel. Violett et al. vs. Judge.

elope Violett, the owner of the property, as no bond had been fur-
nished, and the injunction issued was on behalf of the tenant of the
property, and the dissolution of the writ was accordingly of the writ
issued on behalf of the tenant. That the judgment dissolving the
injunction was rendered in the exercise of the discretion vested in
the court under Art. 307 of the Code of Practice. He prayed that
the writ of *mandamus* be refused.

The application to bond contained no reasons for the same. It was
a simple motion requesting " on motion of counsel for defendant that
plaintiff show cause on the 24th July, 1893, why the injunction should
not be dissolved on defendant's furnishing bond conditioned accord-
ing to law."

The district judge, in making the rule absolute, declared that he
did so for reasons orally assigned and considering the law applicable
to the case. We presume the reasons referred to were the same as
those assigned in the answer or return herein. On the the 20th
July, 1893, defendant in injunction obtained a rule on plaintiff to
show cause on the 24th July, 1893 (the same day on which the rule
on the motion to bond was returnable), why the injunction issued
should not be set aside on the grounds: (1) that the court was with-
out jurisdiction *ratione materiæ*; (2) that even if the court had juris-
diction, the allegations contained in plaintiff's petition were untrue
and not such as would authorize the issuance of the writ; (3) that
the petition on which the injunction issued set forth no cause of ac-
tion; (4) the bond is not good, valid, or sufficient.

The record does not show what action, if any, was taken in the
matter of this last rule.

The fact stated by the judge in his answer, that an order dissolving
an injunction on bond is granted by a district judge in the exercise of a
judicial discretion expressly conferred upon him by law, does not
withdraw that order absolutely from being made the subject of re-
view by this court. When the district judge, on application made to
him by a defendant in injunction, permits the bonding of the injunc-
tion, plaintiff has the legal right to apply for a suspensive appeal
from the order to that effect. Should this be denied him, he has the
undoubted right to have tested in this court, as is now being done by
the relator in this case, the question whether the judge was war-
ranted and justified in this refusal. On such an inquiry this court has
necessarily to determine whether the judge's discretion, which only

6

extends legally to cases wherein the dissolution of the injunction would not work irreparable injury to the plaintiff, has been legally applied or not. If we find it has not we grant relief, otherwise relator takes nothing by his application to us. As has been said several times by this court, each case must stand or fall upon its own special facts and circumstances. White vs. Cazenave, 14 An. 57; Blanc vs. Murray, 36 An. 167.

For the purposes of our decision, we take as true the allegations of fact contained in the petition for injunction, confining ourselves to the restricted issue on the pleadings as to the correctness *vel non* of the judge's action in the matter of the refusal of the appeal, which carries with it the determination of the question whether the bonding of the particular case would or would not work irreparable injury to the plaintiff. If we could under any circumstances extend our inquiries to matters touching the injunction proper, the matters which we could consider would have to be very exceptional and radical in their character. This whole subject has been very fully discussed in the case of State *ex rel.* Puckette vs. Hicks, 39 An. 901, where a *mandamus* was asked by plaintiff in injunction to compel the defendant judge to grant a suspensive appeal from an order *dissolving a preliminary injunction*.

The court, referring to the fact that by Art. 307 of the Code of Practice courts which grant injunctions are authorized "in their discretion" to dissolve an injunction on bond, said that the discretion thus vested was limited by the article to cases where the act prohibited may not work an irreparable injury—that in the latter case they have no right or power to dissolve, and that an order dissolving on bond in such cases is itself an interlocutory judgment, which may cause irreparable injury, and is therefore appealable under Art. 566 of the Code of Practice, which provides that "one may appeal from all interlocutory judgments when such judgments may cause him an irreparable injury." It further said that where the judge refuses to grant an appeal from such an order the plaintiff might resort to the Supreme Court for a *mandamus* to compel him to do so—that on application for such *mandamus* the inquiry in that court was simply whether the act which is prohibited by the injunction and is unfettered by the dissolution is such as may cause to plaintiff an irreparable injury. If found to be such the *mandamus* is granted, if not so found it is denied—that in this inquiry the allegations of the plain-

tiff's petition are taken for true so far as the facts therein set forth are concerned—that by this is not meant that the court was to be concluded by mere allegations in the petition that the acts restrained will occasion irreparable injury; that such allegations are mere inferences and deductions from the acts and facts charged, the verity and soundness of which the Supreme Court could review (see Crescent City vs. Police Jury, 32 An. 1194, 1195, 1196). That it had to examine the facts charged, and the nature and character of the injury which might be inflicted by the acts complained of, and is thus to determine whether such injury might be irreparable *vel non*. The court then proceeded to say that it was difficult to lay down any precise rule as to what gives to an injury the quality of being irreparable, but that the general principle was that an injury the damage from which is merely in the nature of pecuniary loss and could be exactly and fully repaired by compensation in money is a reparable injury, for which a bond of sufficient amount and properly secured would afford all adequate indemnity. The court quoted approvingly from the case of Crescent City vs. Police Jury, 32 An. 1194, where on a former occasion it had said:

"There are many injuries which in the very nature of things can not be repaired by any money consideration, such for instance as result from acts which outrage the feelings and wound the sensibilities, or deprive us of objects of affection, or of things which, trivial in themselves, but of inestimable value by reason solely of being associated with some precious memory or touching incident of our lives. Or it may be that the maintenance of the writ was required to preserve to us our homes and to establish us in a state or condition which lost for the moment can never be recovered nor the loss atoned for by money. In this class of cases the injunction should be maintained because the injury from its dissolution would be irreparable."

This extract was quoted not as an exhaustive but as an illustrative statement of the kind of injuries which were to be considered irr - parable. The cases of Delacroix vs. Villeré, 11 An. 39; White vs. Casenave, 14 An. 57; Marion vs. Johnson, 22 An. 512; Boedicker vs. East, 24 An. 154; Sigur vs. Judge, 33 An. 133; Waterworks vs. Oser, 36 An. 918; and Knabe vs. Ferrot, 14 An. 847, were also cited as illustrations of the principles guiding this court on those matters. Each particular case (it was declared) would have to be considered on its own facts and circumstances and the relief determined thereby.

The court further said that it was impossible and eminently improper for it to enter into a discussion of the legality and propriety of the injunction itself, unless on the face of the papers it was perfectly manifest that the granting of the injunction was an abuse of the power of the court (see Crescent City vs. Police Jury, 32 An. 1196).

The court held the relator to be entitled to a suspensive appeal and made the provisional writ of *mandamus* which had issued to peremptory.

In the case at bar the injunction was not sought to restrain the defendants from carrying on their business as keepers of a livery stable, but only from doing so in the manner complained of, which it was claimed was resulting in the commission of a nuisance intolerable to the plaintiffs.

The fact that the particular plaintiff who perfected the injunction by giving bond does not own the premises which he occupies, but occupies it as a tenant, does not withdraw from him and his family the protection of the law against a nuisance affecting their health or their comfort. The law in this State does not limit its protection to parties who are aggrieved in dollars and cents by a continuing nuisance (Blanc vs. Murray, 36 An. 164). The right of the tenant as plaintiff in injunction is destroyed neither because of the joinder with him of the owner of the premises in the petition for an injunction, and her failure to give bond, nor by the fact that she joins him in this court as one of the relators herein. If the owner has failed to give bond she may have no standing in court and should be so adjudged, but the tenant is before us standing on his own rights and not depending on hers.

The effect of the dissolution in this case would be to authorize and permit the defendant in injunction to do the act complained of and restrained—in other words, defendants, through the judge's order, would not only be authorized to pursue and carry on their business as keepers of a livery stable, but to do so regardless of what are alleged to be plaintiff's legal rights. Had the injunction taken out had as its effect the entire closing up at once of defendant's establishment this case would have been presented to us in a very different aspect from that which it actually has. Under the pleadings plaintiff has a vital present interest in having defendant's business conducted in such a manner as would not result in a nuisance to him. The in-

junction would have no greater effect than that. If defendants' business should be properly and legally conducted, they would have nothing to fear from the injunction and therefore nothing to complain of as being irreparable in its injury to them. They could not reasonably ask the court to permit them to carry on their business improperly and illegally without restraint of any kind to the termination of this litigation.

It may be that the petition for injunction is not as specific in its details as it should have been, and that the injunction is more general than is desirable, (Patten vs. Marden, 14 Wisconsin, 473), but the defendants sought no modification from the court below. That the granting of the injunction may subject defendants to a liability to charges of contempt of court for alleged violation of the provisions may be true, but that consideration is very remote in the discussion of the matter before us. We can not assume that the plaintiff will seek to harass defendants by contempt proceedings, nor can we assume that such proceedings would work irreparable injury to them. The generality of the terms of the injunction could in such proceedings but work to their benefit and plaintiff's detriment.

In view of the fact that the petition for the injunction does not claim defendant's business to be *per se* a nuisance—does not claim that it was carried on in an unauthorized locality, does not pretend that the common council of New Orleans has enacted regulations in respect to it which defendants have violated, the district judge would unquestionably on a matter of contempt bear in mind that within reasonable limits the individual citizen has to submit to some annoyance and inconvenience from the legal exercise of the rights of others, and would only hold defendants responsible on strict proof of a clear disregard by the defendant in injunction of those obligations which Art. 666 C. C. declares " citizens owe to each other under the law, independently of all agreement." Wood on Nuisances, Sec. 498.

In Delacroix vs. Villere, 11 An. 40, the court, alluding to a number of cases where defendants in injunction had been permitted to bond the injunction, said that an examination of them would show that they were cases in which the injury was really appreciable in money and where the continuance of the injunction was likely to work a more serious injury to the other side. That there were some things that bonds would not cover and which could not be estimated in

City vs. Coffee Co.

dollars and cents, and if our law can not protect in cases like those it but poorly earned the encomiums bestowed upon it.    In Blanc vs. Murray the court said: "In determining the question of nuisance *vel non* it is necessary to balance the rights of the parties in view of all the circumstances and say whether or not the use of the property in the manner complained of is reasonable and in accordance with the relative rights of the parties."

This remark was made after a trial on the merits, but the relative rights of parties as they appear *prima facie* in the pleadings are easily discoverable in this case.

The parties to this litigation do not stand before the court by any means with an equality of right.  The plaintiff has everything to lose and the defendant nothing legally to gain by bonding the injunction.

It might well be asked (altering a little the words of Mr. Justice Egan, in his dissenting opinion in the case of State ex rel. Druillet vs. Judge, 29 An. 870), "who can recall or repair the effect of a continuing nuisance to the health and comfort of plaintiff and his family, and what is the effect of allowing a dissolution of the injunction in this case if it be not to permit defendants to continue and keep up the nuisance complained of during the pendency of the suit, however long."

We are of the opinion that the plaintiff was entitled to a continuance of the injunction until the hearing of the case on its merits and that the dissolving of the same on bond would work irreparable injury to the relator, Atwood Violett.  He is entitled to the suspensive appeal for which he applied.

It is therefore ordered and decreed that the provisional writ of *mandamus* herein issued be and the same is hereby made peremptory in favor of the relator, Atwood Violett.  Mrs. Penelope A. Violett not having perfected the injunction by bond in the lower court the *mandamus* asked for is as to her refused.