NICHOLLS, J.
Plaintiff alleged in his petition that he is the owner of the Baratar-ía & Lafourche Canal, a water course of this state, open to public navigation and in daily use by boats of various tonnage, propelled by steam, oil, and otherwise.
That said Barataría & Lafourche Canal consists of a system of short canals cut through intervening territory so as to connect the natural streams and lakes of the parishes of Terrebonne, Lafourche, St. Charles, and Jefferson, in which latter parish said canal finds its terminus and enters the Mississippi river by means of lock gates.
That said Barataría & Lafourche Canal is a waterway of no mean importance to the commerce of the parishes through which it runs, and that it is important that the waters of said canal be kept, pure and undefiled, so that it may not injure -the waters of the natural streams and lakes with which it connects, and so that the waters of the said canal may be fit for the use of boats for steam purposes.
Petitioner shows that in the parish of Lafourche the said canal, in connecting Bayou Lafourche and Bayou des Allemands, natural streams of said parish, passes through the sugar plantation known as “Clo-thilda Plantation,” the property of Frank and Melodía Barker, minor children of the late Mr. and Mrs. Frank Barker, who are under the tutorship of Leon Gaillardanne, a resident of the parish of Orleans, in this state.
That said plantation is in cultivation of cane, and its owners, their agents and employes, are in the active production or manufacture of sugar from cane syrups, and are in the active operation of a sugarhouse on said plantation for said purpose, which said plantation is situated in this parish.
That the tutor of said minors, his agents, servants, or employes, are pumping or allowing to flow sugarhouse slops, sugarhouse acids, and sugarhouse refuse from said sug-arhouse on said plantation into the drainage canals of said plantation, which have an ultimate discharge into the said Barataría & Lafourche Canal of petitioner. That said sugarhouse slops, acids, and refuse are injurious to the waters of said canal, as well as to the natural streams into which they must find ultimate entrance; that they poison the water, rendering it unfit for steam purposes, killing the fish in said streams, whose decaying carcasses must eventually befoul the waters of the said canal and the natural streams of the parish. That said sugarhouse slops, acids, and refuse render the waters unfit for use in boilers because said acids in said waters destroy said boilers.
Petitioner further shows that said Barata-ría & Lafourche Canal is a fresh-water feed- *561 cr to the Bayou Lafourche, and it is necessary that the water which hy natural flow it will carry into said Bayou Lafourche must he kept pure and undefiled. That the act of defendant in allowing sugarhouse slops, acids, and refuse to flow into said Canal is a tort, and a nuisance which petitioner has a right to have abated.
That he has made repeated efforts by written notice to the owner of said plantation to have said abuse corrected, hut without avail, and petitioner shows that he is entitled after due proceedings to a judgment of this honorable court forever restraining and prohibiting said Leon Gaillardanne, tutor of said minors, owners of said Clothil-da plantation, his agents or employés, from pumping or allowing to flow said sugar-house slops, sugarhouse acids, and sugar-house refuse from the sugarhouse of said plantation into said Barataría & Lafourche Canal, whether by immediate discharge from ■said sugarhouse or by means of drainage canals of said plantation, otherwise your petitioner will suffer irreparable damage and injury.
In view of the premises, petitioner prays that said defendant, Leon Gaillardanne, tutor of said minors, Frank and Melodía Barker, be duly cited to appear before this honorable court to answer this demand, and that after due proceedings had there may be judgment in favor of petitioner, and •against said defendant, forever enjoining, restraining, and prohibiting him, his agents and employés, from allowing the sugarhouse slops, sugarhouse acids, and sugarhouse slops from the sugarhouse of said Clothilda plantation to flow into said Barataría & La-fourche Canal, whether directly from said sugarhouse or by means of drainage canals •of said plantation. Petitioner reserves his right to sue defendant in a subsequent proceeding for all such damages to which the unlawful acts of said defendant may entitle petitioner. And for all general relief.
The defendant excepted to the jurisdiction of the court ratione personae, on the ground that the minors, Frank and Melodía Barker, of whom he was the tutor, and he himself were residents of the city of New Orleans, and were entitled to be sued in the court of their domicile. The court overruled the exception. Under reservation of the exception, the defendant answered. He first pleaded a general denial. He specially denied that the Barataría & Lafourche Canal has rightfully or ever had any connection as a feeder of fresh water to the Bayou Lafourche, aná avers that it has not had for over 60 years any connection with the said bayou, till some time about the year 1905, when, without authority of law, the plaintiff connected the same with the said bayou by opening the canal into the said Bayou La-fourche/
He further denied that he or agents of the said minors have used the property of the said minors in any other manner than as authorized by law. That the said Clo-thilda plantation uses the ditches which have been constructed upon it for 50 years' or more, in the usual and customary manner for the purpose of the drainage of the said plantation, and as the nature of the lands belonging to the said plantation require, and only in due course of their rightful ownership, and for the benefit of the said lands and the factory thereon.
That in the manufacture of the cane made upon the plantation he and his employés drain the sugarhouse and its refuse into canals and ditches situated entirely upon the lands of the said plantation and of the said minors, when they flow naturally and in accordance with the natural flow of the said drainage of the said lands, and through conduits and ditches entirely upon the lands belonging to the said minors.
That the said drainage, besides being the natural drainage arising from the situation of the said lands, has been used and main- *563 tamed by respondent and the authors of the titles of the said minors for more than 50 years through the canals, conduits, and ditches on the said lands, and that should the court find that the right so to drain does not belong to the said lands by reason of its situation and location, then respondent pleads, as to the right so to drain, the prescription aequirenda causa of one, two, three, four, five, ten, and thirty years and the prescription liberandi causa against the demands of the plaintiff of one, two, three, four, five, ten, and thirty years.
In view of the premises, respondent prays that the demands of the plaintiff be rejected, and for costs, and for all and general relief, costs, etc.
The parties, for the purpose of avoiding costs and submitting the matter at once to the court for determination, made the following admissions:
“(1) The property of the minors, Prank and Melodía Barker, known as the ‘Clothilda Plantation,’ is framed from the original grants made to Augustin Domingus on the left bank of Bayou Lafourche. The natural drainage of these lands is from the front to the rear. The lands belonging to the defendants measure about 27 arpents front, and between them and the land of the plaintiff! there intervenes the plantation of Bourg and others, measuring 27 arpents in width along the Bayou Lafourche and measuring back 40 arpents in depth. The sugarhouse of the defendants is about 4 or 5 arpents from the bayou Lafourche. The canal marked on the plat as the ‘Mathews Canal’ is some 20 to 25 arpents from the Bayou Lafourche. The skimmings and slops and workings from the sugarhouse on Clo-thilda are run into a ditch marked ‘Slop Ditch’ on plan annexed, running back and then turning to the right as you go back, and then to the left, till it enters to the right as you go back, and then to the left till it enters the Mathews Canal.
“This slop ditch runs through a willow swamp which is about 10 arpents in width and 13 ar-pents long. This swamp receives these slops during the grinding season from the slop ditch. The slop ditch is dammed where it enters the Mathews Canal, and openings made to allow slops to run into the swamp on upper and lower side of canal marked on plan as ‘Clothilda and Bourg Swamp.’ This dam is placed in canal before grinding begins, and is not opened until March or April of the next spring.”
“The Clothilda plantation uses the water of Bayou Lafourche for steam purpose. The canal known as the Mathews Canal is leveed on both sides by the dirt thrown up from the canal, which is about 40 feet wide. The canal back on the back part of the Clothilda swamp is used as a road to haul wood; that is, that part of it between the pump and the slop ditch. It is admitted that slops and workings have been run into the canal of the plaintiff from the plantation now known as the ‘Ask Plantation,’ and against the doing of which a similar suit as the present one has been brought. (See sketch marked ‘A,’)”
The district court rendered judgment in favor of the plaintiff and against defendant, tutor—
“ordering, adjudging and decreeing that the injunction prayed for be granted to the extent of forever enjoining, restraining, and prohibiting the defendant, his agent and employes, from allowing or permitting sugarhouse slops, acids, and other refuse from the sugarhouse on the Clothilda plantation to flow into the Barataría & Lafourche Canal of plaintiff directly or indirectly by way of and through what is known as the ‘Mathews Canal,’ designated on the map or sketch offered in evidence by the letters, G, D, and E.
“It is finally ordered that the defendant pay all costs of this suit.”
Defendant applied for a new trial on the ground that the judgment was contrary to the lavs’ and the evidence. The motion was denied, and defendant has appealed.
The district judge gave extended reasons for his judgment, which we copy, commenting upon them later.
The evidence adduced establishes the following facts: The map or plan marked “A” and offered in evidence shows the relative positions of plaintiff’s canal and defendant’s Clothilda plantation. The sugar factory situated on the Clothilda plantation, four or five acres from Bayou Lafourche, discharges its refuse or slops into a ditch designated on the plan by the letters A, B, C, and D.
The said ditch discharges ipto the Mathews Canal at point D, about 25 arpents from Bayou Lafourche, and the Mathews Canal discharges into the Lafourche & Barataría Canal of plaintiff at point E.
Before commencing operations in the sugar factory on the Clothilda plantation, the owners thereof cause the slop ditch to be dammed *565 about an acre from the Mathews Canal. The effect of this damming is to cause the slop and refuse to flow into the Bourg and Clo-thilda swamps, situated to the right and left of said ditch. There is a levee situated along Mathews Canal on the Clothilda plantation from points G to D of such height as to prevent the water or slop from overflowing from the Clothilda swamp into the Mathews Canal. The levee between the Bourg swamp and the Natchez Canal, designated by the letters D and E, has been partially washed away, has cuts and openings through it, and the refuse and slops from the Clothilda plantation enter the Mathews Canal by means of the Bourg swamp, and flows from the Mathews Canal into the La-fourche & Baratarla Canal at point E. No water can enter the Lafourche & Baratarla Canal directly from the Bourg swamp (on the lower line of the Bourg plantation), it being separated from the said canal by a high and sound levee, designated by letters H and E. The slop or drainage ditch from point c'to D is situated on the lower boundary line of the Clothilda plantation of defendants, and separates it from the Bourg plantation, which is the property of other people, but the two properties were formerly owned by one John Lyall, and when so owned constituted but one plantation. The natural drainage of the Clothilda plantation, and in fact that whole section of the country, is from front to rear and towards the Gulf; that is to say, in the direction of the Lafourche & Barataría Canal from the .Clothilda plantation. The Clothilda plantation of plaintiff measures 27 arpents front on Bayou Lafourche by a depth of 40 arpents, and the Bourg plantation which separates the plantation of defendants from the canal of plaintiff has the same front and depth. The Mathews Canal is owned by the parties through whose land the canal passes. These are the undisputed facts in the case. The only question presented is one of law; that is to say, whether the defendants can be enjoined from permitting the slops, acids, and other refuse from the sugar factory flowing into plaintiff’s canal in the manner disclosed by the above statement of facts. There is no question but that the natural drainage of the defendant’s plantation is from front to rear and towards the Gulf, or in the direction of plaintiff’s canal. It is equally true that the natural flow of the water from defendant’s land cannot be impeded or interfered with by his neighbors. But this servitude is confined to those waters only that run naturally from the estate above, and the proprietor above can do nothing whereby the natural servitude due by the estate below may be rendered more burdensome. R. Civ. Code. art. 660. The evidence in this case shows that the defendant’s slop ditch from his sugarhouse runs from front to rear and enters a large canal in rear of the plantation known as the ‘Mathews Canal,’ which empties a few acres below into the Navigation Canal of plaintiff. Without this canal, which is on defendant’s plantation and is their property, the drainage from the slop ditch would be into the swamp situated on either side of the canal.
The Mathews Canal having been created by the industry of man, the drainage of the slops, acids, and refuse through the same into the Navigation Canal of plaintiff increases and renders more burdensome the servitude of drain due by the upper estate to that of the lower. True it is, that defendants, previous to starting operations at the sugar factory, placed a dam in the slop ditch at about one acre from the Mathews Canal, but the evidence shows that the effect of this dam is to cause the ditch to overflow into the swamps on either side, and the levee thrown up on the side of the Mathews Canal in the Bourg swamp not being kept intact, and having been washed away to such an ex *567 tent that it Is full of holes and cuts, the dam placed in the slop ditch affords but little protection from the flow of the slops and acids into the Mathews Canal and from thence into the Navigation Canal of plaintiff. Defendants cannot do indirectly what the law forbids them to do directly. But the defendants contend that the slops and acids from the sugar factory can be disposed of in no other way, and that to prevent them from disposing of their refuse in this manner would be to destroy the value of the plantation as a manufacturing point.
Even though this were true, the law on the subject would still remain the same, but the evidence adduced does not satisfy the court that the slops and acids cannot be disposed of in some other manner and without material injury to either party. If the dam placed in the slop ditch were placed there in good faith for the purpose of preventing the refuse from entering the canal of plaintiff, then why not- either throw up an embankment on the lower side of the slop ditch and in this manner confine the refuse to the Clothilda swamp, or, with permission of the owners of the Bourg swamp, repair the levee along the Mathews Canal separating it from the Bourg swamp? It may be, even if such steps were taken by the defendants, that the polluted water would still reach the plaintiff’s canal by percolating through the levees. It may be also that the refuse water, after mixing with the large quantity of the swamp water, would, in percolating through the levees, become so diluted and purified as to not materially affect the water in plaintiff’s canal.
But be this as it may, the court is not called upon at this time to decide a question so remote and concerning which there is no complaint. If defendants take the necessary steps to prevent the refuse water from entering the plaintiff’s canal by way of the Mathews Canal, and the refuse waters still by other ways and means enters the plaintiff’s canal and befouls its waters, it will then be time enough to decide whether under these circumstances the plaintiff would be entitled to relief.
In the present case the water does not percolate through any levee, but overflows the dam placed in defendant’s slop ditch, and has only one acre to run without impediment into the Mathews Canal and thence into the Navigation Canal of plaintiff. In the case of McEarlain v. Jennings Heywood Oil Syndicate, 118 La. 537, 43 South. 155 et seq., where the oil syndicate permitted mixed oil and salt water to flow through natural drains to the lower estate, thereby injuring the farm and timber lands of the lower estate, our Supreme Court, in holding the proprietor above is' responsible for the damage thus inflicted to the estate below, uses this language :
“That the plaintiff has suffered actual damages to his pghts of property by the flow of oil and water is not denied, but the first defense is that the injurious result is damnum absque injuria.”
This contention is predicated necessarily on the assumption that there exists a servitude of drain for oil and water on the lower estate in favor of the oil field above. The servitude of drain arises from the natural situation of places, and its extent is thus defined:
“It is a servitude due by the estate situated below to receive the waters that run naturally from the estate situated above, provided that the industry of man has not been used to create that servitude. The proprietor below is not at liberty to raise any dam, or to make any other work to prevent the running of the water.
“The proprietor above can do nothing whereby the natural servitude by the estate below may be rendered more burdensome. Civ. Code, art. 660. This servitude is confined to waters that run naturally from the estate below. The text of the law excludes a service of drain created by the industry of man. That oil and water extracted by the labors of man from the bowels of the earth, and whose natural flow, if any, is a thousand or more feet below the surface, do not come within the purview of the article of the Code cited, is too plain for argu *569 ment, and no useful purpose can be subserved by consulting the judge-made laws of other jurisdictions on the subject-matter.”
While the facts in the instant case are somewhat different from those in the case from which the above extract is taken, yet the reasoning of the court applies with equal force to the case under consideration. The slops and acids and other refuse from the factory are created by the industry of man, and to permit them to flow through a slop ditch and the Mathews Canal into the plaintiff’s Navigation Canal would be to render the servitude due by the lower estate more burdensome.
Counsel for the defendants contends that, even though the act complained of is a nuisance, it is a public and not a private one, and that suit should be instituted to have it abated by the public and not by a private person. The act complained of is both a public and a private nuisance. It is public because, if the waters of Bayou Lafourche, with which the plaintiff’s canal connects, should become polluted from the slops, acids, and refuse, it would be unfit for steam purposes, and the evidence shows that the sugar factory of plaintiff, as well as those of other persons on Bayou Lafourche, draw their water supply from this stream. The inhabitants along-the Bayou Lafourche would be deprived of their water supply. The fish would die, and as a result befoul the water and cause sickness and disease. It is a private nuisance because, as testified to by the plaintiff, R. R. Barrow, the water in the canal is rendered undesirable for steam purposes by steamboats navigating the canal, causing the boilers to burn, and because Mr. Barrow was notified by the levee board, that unless he prevented sugarhouse refuse from entering the Bayou Lafourche through his canal, the canal would have to be closed.
But whether the nuisance be public or private, the .plaintiff, if he has suffered damages, has the right to have it abated.
“If a nuisance is susceptible of being both public and private, and is so .to such an extent that an individual right is violated, then the private remedy is permissible, even though the result may be to open the door to a multiplicity of suits.” Blanc v. Murray, 36 La. Ann. 162, 51 Am. Rep. 7.
In the case of Bruning v. N. O. Canal Co., reported in the 12 La. Ann. 543, the court uses this language:
“We are not disposed to say, because the decision of this case does not require it, whether the initiative in the abatement of the nuisance of an obstruction of a public highway is exclusively reserved by the city council, or whether proceedings might be commenced for that purpose by individual citizens who were aggrieved by the nuisance. But we assert the right of the .citizen so aggrieved to an action in damages against the offending party.”
In the ease of Slaughterhouse v. Larrieux, 30 La. Ann. 799, it was held that:
“The doctrine of our law is, and so far as we know without any exception, that a party whose rights are invaded may invoke the aid of the courts to prevent any act which if done would entitle him to damages.”
Reading these two decisions together, it would seem to follow that if under the 12 La.. Ann. 543 case plaintiff is entitled to damages, then under the 30 La. Ann. 799 ease he is entitled to an injunction. See, also, Wood on Nuisance, p. 1120; High on Injunction (3d Ed.) p. 568.
The evidence in this case shows that the nuisance is both a public and private one, and in either case plaintiff is entitled to an injunction. The court has carefully considered the contention of counsel that the natural drainage of that section of the country on the left descending bank of Bayou Lafourche is from front to rear and toward the Gulf, and that for this reason all slops and refuse from sugar factories in that section of the country must eventually enter plaintiff’s canal in its natural course to the gulf. This may be true and still in no way inflict any damage upon plaintiff. Before such slops and refuse could reach the plaintiff’s canal they would by slow process flow through various swamps, bayous, and lakes, and in so *571 doing would probably become so diluted and purified as to become harmless by the time it reached the canal owned by plaintiff. But .even though this were not true, and the waters of these bayous, lakes, and the Navigation Canal should become so polluted and poisoned from the effects of the slop and refuse as to become a nuisance and a source of .damage to persons living on or navigating these streams, this would certainly be such .a nuisance as would entitle the persons aggrieved to damages, and give rise to an action to have the nuisance abated by injunction.
The common-law authorities relied on by the defendants have no application to the present ease. They are based on custom, but custom cannot be considered when it comes in conflict with our written law. The prescription of one year would possibly be good as against a claim of damages caused more than a year ago, but in this ease the nuisance .complained of is a continuing one, and the right to have it abated is not prescribed. ■The other prescriptions pleaded .are not sustained by any evidence in the record.
No damages having been asked, none are ;allowed.
Opinion.
The court correctly overruled the exception to its jurisdiction.' The defendant in •throwing the slops from the sugarhouse into the slop ditch and conducting them through that ditch to a position so near the Mathews Oanal as to enable them to flow into it and thence into the canal of the defendant, committed a positive act which, if wrongful, would subject him to damages in favor of the plaintiffs, and entitle plaintiff to prevent the continuance of the same through the .court of the parish where committed.
The testimony on both sides is meager, but it is sufficiently in favor of the plaintiff to justify the conclusions of fact reached by the district court. The questions of law were correctly decided by it.
It is claimed by the defendant that the injunction, even if properly issued, was too broad, and, if maintained as rendered, would ruin the Clothilda plantation for the manufacture of sugar, but we do not construe the decree as the defendant does. The decree enjoins the defendant from conducting the slops from the sugarhouse through a ditch or ditches to the rear of the plantation and discharging them in such quantity and so near to the Mathews Canal as ■ to cause or enable them (the slops) to enter the canal, not only by percolating, but “by flowing” into it through ditches or other openings in that levee.
We think it possible and feasible for the defendant to so deal with these slops or refuse on the plantation as to prevent that result from happening. It may be that the terms of the decree of the district court are more general than desirable, but the defendant sought no modification of the same in the lower court, and our remarks in the case of Violett v. Judge, 46 La. Ann. 85, 14 South. 428, made on the same subject, are applicable here. Under the construction which we place upon the judgment appealed from, it is hereby affirmed.