290 So.2d 821 (1974)
Frank T. SALTER, Jr., et al.
v.
B. W. S. CORPORATION, INC.
No. 53629.
Supreme Court of Louisiana.
February 18, 1974.
*822 Seth Lewis, Jr., Lewis & Lewis, Opelousas, for defendant-applicant.
Joseph W. Greenwald, Asst. Dist. Atty., Lake Charles, for plaintiffs-respondents.
DIXON, Justice.
We granted certiorari in this case to consider the broad injunction issued by the trial court and affirmed by the Court of Appeal prohibiting the defendant from "disposing of any acid and/or chemicals on their property."
The defendant, B. W. S. Corporation, Inc., is engaged in the business of disposing of various kinds of industrial waste. B. W. S., intending to dispose of these waste materials by burying them in the ground, undertook engineering site evaluations of property near Starks, Louisiana *823 and a one hundred sixty acre tract outside DeQuincy, Louisiana. The tests indicated that the DeQuincy property was suitable for the purpose intended by B. W. S. and the property was purchased. The corporation sought and was granted a permit from the Louisiana State Department of Health to carry on its proposed disposal operations at the site.
B. W. S. proposed to dispose of the waste by burying it in trenches fifteen feet deep by thirty feet wide by one hundred fifty feet long with a cover of ten feet of clay.
Immediately after B. W. S. began to truck barrels of chemical wastes onto this property, the Calcasieu Parish district attorney, a police juror and the mayor of DeQuincy instituted this suit obtaining a temporary restraining order. Subsequently, two neighbors intervened, an adjacent landowner, Ivey Vanwinkle, and George Frazier, who described himself in his petition as a lessee.[1] The trial court sustained defendant's exceptions of no cause and no right of action as to the district attorney, the police juror and the mayor. No appeal was taken from that ruling. An exception of no right of action was filed by the defendant in the intervention of George Frazier, but it was not pursued by the defendant. After a two day trial, a temporary injunction was issued and by stipulation was made into a permanent injunction in favor of both intervenors, Frazier and Vanwinkle, and against the defendant, B. W. S. On appeal, the judgment was affirmed. 281 So.2d 764 (1973).
The intervenor, Frazier, who occupies a tract adjacent to the northeast corner of defendant's property, established that he had a shallow well to the depth of twenty-thirty feet located five hundred feet east of defendant's property.
Vanwinkle, whose property is located across Louisiana Highway 389 due north of the middle portion of defendant's tract, established that he had a water well one hundred eighty-nine feet deep and a pond twelve feet deep on his property. The well is some seven hundred feet from defendant's property.
Plaintiffs sought the injunction because of the alleged imminent danger of the pollution of their wells and pond by lethal substances placed on defendant's tract.
At trial the plaintiffs called several expert witnesses. Anthony Starkovich, a chemist, testified that samples taken from the barrels located at the site included acids and caustic substances containing heavy metals. Neil Bishop, a sanitary engineer, testified that the natural drain in the area was to the south and that the soil for two or three feet under the surface was a silty loam which was very permeable. Jacoby Scher, an expert in water pollution and solid waste, testified that there are six wells and a pond in the area and that in his opinion there was a probability that chemicals buried on defendant's property would permeate the wells in the area. We note that Scher's opinion was not based on tests, borings or any other source of evidence concerning the relationship between aquifers on defendant's property and those under plaintiffs' property. He also testified that the movement of fluid through clay was on the order of 1/100 of a foot a year. Louis Capozzoli, a civil engineer with expertise in waste disposal, testified that some borings taken between a pit which had been dug on defendant's land and Frazier's well indicated a sand stratum at eighteen feet. Other borings reached a sand stratum at depths of twenty-six to twenty-eight feet. In his opinion there is a sandy silt stratum running from the boring nearest the pit to Frazier's well. He also testified that, even though the natural *824 flow in the acquifer was probably from the Frazier property to defendant's property, removal of water from the well could cause a reversal in the natural flow.
Gordon Boutwell, an expert in soil mechanics and soil foundations, who testified on behalf of defendant, stated that the subsurface of the site consisted primarily of clay with a few layers of sand to a depth of thirty feet. He was of the opinion that the site was suitable for the intended purpose provided that the trenches were lined with four to five feet of compacted clay or other impermeable material, such as drilling mud. Another expert witness, Ara Arman, corroborated the testimony of Boutwell and stated that the proposed operations could be conducted safely if the trench was lined with an impermeable material and if the chemicals involved did not react adversely with the soil. The witness Ferrell, a clay mineralogist, testified that he had tested the clays from the site with samples of substances taken from the barrels at the location. He stated the clays from the site would react with the chemicals and that the reaction would neutralize the chemicals on a one to one volume basis with the clay. The result of the reaction would be to fill the pores in the clay, thus making it more impermeable.
This action falls under C.C. 667 which provides:
"Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him."
We must now consider whether Frazier, who is at most a lessee, has a right of action. In State ex rel. Villett v. King, 46 La.Ann. 78, 14 So. 423 (1894), the court held that a tenant had a right of action in a proceeding to enjoin certain objectionable aspects of an operation conducted on neighboring property where that operation threatened the health and comfort of the tenant. In Robichaux v. Huppenbauer, 258 La. 139, 245 So.2d 385 (1971), we granted injunctive relief to tenants whose health and safety were threatened by the manner in which the neighboring property was being used. In Lombard v. Sewerage and Water Board of New Orleans, 284 So.2d 905 (La.1973), we recognized that "proprietor" as used in C.C. 667 need not be limited to owners.
We find that under the circumstances before us Frazier has a legally cognizable interest in the litigation and has a right of action to seek an injunction.
From the evidence adduced at trial we conclude that intervenor Vanwinkle has failed to prove that operations on defendant's property will damage his property. There is no evidence to show that underground disposal of chemical waste will interfere with his water well or pond.
We find that the evidence establishes the probability that disposal of chemical waste by defendant without adequate precautions will pollute the well from which Frazier and his family obtain their water, thus posing a threat to their health and safety. However, evidence adduced by the defendant satisfies us that the operation envisioned can be conducted safely if the recommendations relative to ensuring that the trenches are lined with an impermeable material are followed.
In order to justify an injunction prohibiting lawful activities a showing must be made that the proposed operations will occasion irreparable injury. C.C.P. 3601; Cf. Hilliard v. Shuff, 260 La. 384, 256 So.2d 127 (1972); Frederick v. Brown Funeral Homes, 222 La. 57, 62 So.2d 100 (1952); Bell v. Riggs & Bro., 38 La.Ann. 555 (1886); Fuselier v. Spalding, 2 La. Ann. 773 (1847). See also, Young v. International Paper Co., 179 La. 803, 155 So. 231 (1934); Adams v. Town of Ruston, 194 La. 403, 193 So. 688 (1940).
C.C.P. 3601 provides in pertinent part:
"An injunction shall issue in cases where irreparable injury, loss, or damage may *825 otherwise result to the applicant, or in other cases specifically provided by law."
We find the availability of injunctive relief in an action predicated on C.C. 667 is controlled by C.C.P. 3601. C.C. 667 does not specifically provide for injunctive relief; thus an injunction is only available under this article upon a showing of irreparable injury.[2] Contra, see the dissent in Hilliard v. Shuff, supra.
No one may prevent the establishment of a lawful business merely because of fear that it will cause damage to neighboring estates. Cf. Frederick v. Brown Funeral Homes, supra; Graver v. Lepine, 161 La. 97, 108 So. 138 (1926); Canone v. Pailet, 160 La. 159, 106 So. 730 (1926).
Suit was filed in this case before the disposition of any waste material. We have only the plans of the defendant and the beginning of its operation. The record establishes that this waste disposal operation can be conducted safely and in a manner not violating the duties of vicinage. However, the consequences of failure to exercise great care to prevent the escape of poisonous materials are so serious (the poisoning of Frazier's well) that we deem it appropriate to issue a qualified injunction. See Robichaux v. Huppenbauer, supra. Although the record shows only that the violation of recommended engineering procedures will result in damage to neighbors, the consequences of escaping poisonous materials are so terrible that the injunctive relief is appropriate.
The defendant will therefore be enjoined to conduct its operations in compliance with standards recommended by its experts which will prohibit the escape of noxious substances on the property of its neighbors. The right is reserved to plaintiffs to renew their complaint upon the failure of the defendant to comply with such standards.
For these reasons, the case is remanded to the district court, where an injunction, mandatory and prohibitory, will issue upon such terms and conditions as the district court may find necessary after whatever further proceedings it may require, all at the cost of defendant.
BARHAM, J., concurs and assigns reasons in which TATE, J., joins.
BARHAM, Justice (concurring).
For the purpose of this concurrence, I will accept the facts as set forth by the majority. The majority has found that the defendant, B. W. S. Corporation, Inc., in providing underground storage for chemical waste will probably cause damage to the water supply of Frazier, a lessee of a neighboring estate. The majority believes, however, that the underground storage of toxic chemical waste can be utilized safely if certain precautionary measures are taken. The majority thus issues a "qualified injunction". The only party who is granted relief against B. W. S. is the neighbor, Frazier, whom the majority classifies "at most a lessee".
The majority errs in designating the source of the substantive right of a non-proprietor to complain of probable harm which will be caused by the nature of an activity operated on neighboring property. Civil Code Article 667 creates a legal servitude due one estate from a neighboring estate. It gives to the proprietor of the servient estate the right to protect and preserve this real right, a servitude. It is an article designed to protect property from the abuse of the right of ownership by the works made on a neighboring estate. That article reads:
"Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may *826 deprive his neighbor of the liberty of enjoying his own [estate], or which may be the cause of any damage to him [the proprietor of the estate]."
The majority has simply concluded, "We find that under the circumstances before us Frazier has a legally cognizable interest in the litigation and has a right of action to seek an injunction." This "cognizable interest" is found by the majority to flow from Civil Code Article 667. The majority cites two "nuisance" cases as authority for tenants to protect their health and safety when threatened by the manner in which neighboring property was used: State ex rel. Violett v. King, 46 La.Ann. 78, 14 So. 423 (1894), and Robichaux v. Huppenbauer, 258 La. 139, 245 So.2d 385 (1971). Both cases concerned the operation of livery stables. The first case cites and relies upon Civil Code Article 666 and an out of date text, "Wood on Nuisances". The second case concluded that our Civil Code did not provide for a remedy against insufferable inconveniences brought upon neighbors by abusive use of neighboring estates. That case decided that Louisiana was governed by the common law in the field of nuisances.
While I find that the Civil Code provides adequate remedies for those who are made to endure insufferable inconveniences caused by neighborhood activities, I also find that if there was a gap in the law which failed to provide for these instances, that our Civil Code gives us several means of ascertaining the civil law concept which should be applied. Common law is not a source of law under our Civil Code. I pointed out in concurrence in Robichaux v. Huppenbauer, supra, what I believed to be grave error on the part of the majority in resorting to the common law nuisance when the resolution of the problem was required to be made under the Civil Code.
The majority here also cites Lombard v. Sewerage & Water Board of New Orleans, 284 So.2d 905 (La.1973) as authority for the right of action of a lessee. First, Lombard is inapposite since it was a suit for damages and did not seek injunctive relief. Second, Lombard used the wrong source for awarding liability to one other than a "proprietor" when the activities of neighbors, other than proprietors, cause damage to others. See my dissent in Lombard, supra.
Civil Code Article 667 confers a real right upon a landowner and a real obligation upon the proprietor of a neighboring estate. Lessees of predial estates in Louisiana have only personal rights affecting the immovable leases. Lessees have personal rights of action against the lessor for enforcement of the lessees' right of enjoyment. 2 A. Yiannopoulos, Louisiana Civil Law Treatise, § 95 (1967). It is the lessor the landownerwho must exercise the real rights of ownership and possession of immovable property under surface lease. A lessee has no real rights which he can exert against third parties including neighboring landowners. Lessees have only personal rights which can be exerted against third parties. 33 La.L.Rev. 197 (1973). Therefore, if the lessee, Frazier, is to have a "legally cognizable interest" in this litigation, we must find a personal right which he can exert. Otherwise, he is limited to an action against the lessor-land-owner to force him to maintain the lessee in quiet peaceable possession which would include the right of enjoying the use of the estate without insufferable inconvenience or damage.
Frazier, the lessee, does have a personal right of action. Civil Code Article 669 provides:
"If the works or materials for any manufactory or other operation, cause an inconvenience to those in the same or in the neighboring houses, by diffusing smoke or nauseous smell, and there be no servitude established by which they are regulated, their sufferance must be determined by the rules of the police, or the customs of the place."
*827 While the present wording of the article is limited in its examples of insufferable inconveniences, this comes about because of a mistranslation of the French of the article in earlier copies. See concurrence in Robichaux v. Huppenbauer, supra. Civil Code Article 669 prohibits the activities of even those in the same house or in the neighborhood which cause insufferable inconvenience as "determined by the rules of the police, or the customs of the place." The case at hand is a perfect situation for the application of this article. A lessee complains that his water supply will be contaminated by poisonous wastes stored on a neighbor's property. He has satisfied the majority, and I will concur in that finding, that disposing of chemical wastes underground on adjoining property will probably poison his water supply unless the activities are controlled. The expert witnesses have determined the regulations which are necessary to protect the lessee. The majority believes that the activity can be done safely if these regulations are enforced. They have enjoined the defendant, B. W. S., from damaging this lessee.
They have protected his personal right through a limited injunction. Their source for this procedural remedy is their second major error. The majority finds that the injunctive relief which the lessee seeks is found in Code of Civil Procedure Article 3601:
"An injunction shall issue in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law."
If the majority had sourced the plaintiffs' right and cause of action in Civil Code Article 669, as I do, I would agree that Code of Civil Procedure Article 3601 lays down the proper procedural guideline of irreparable injury. However, the majority has stated:
"We find the availability of injunctive relief in an action predicated on C.C. 667 is controlled by C.C.P. 3601. C.C. 667 does not specifically provide for injunctive relief; thus an injunction is only available under this article upon a showing of irreparable injury. Contra, see the dissent in Hilliard v. Shuff, supra." [260 La. 384, 256 So.2d 127 (1972)].
The majority then drops a footnote, stating:
"We expressly do not decide the circumstances under which an injunction will issue in cases involving interference with conventional servitudes or under a positive legal servitude, such as C.C. 665. See, Poole v. Guste, 261 La. 1110, 262 So.2d 339 (1972)."
The majority errs in several respects in these statements. Civil Code Article 665 is no more a positive legal servitude than is Civil Code Article 667. The servitudes are of the same quality, merely regulating different rights and obligations. Civil Code Article 667 has every aspect required of a legal servitude: a dominant and a servient estate, a charge laid on one estate for the benefit of the other, two different owners of the two estates.
The majority then says injunctive relief is not provided in Civil Code Article 667. Injunctive relief is not provided with use of special words in Civil Code Article 665 or any of the other substantive rules of law dealing with real rights, but all of these rules of law dealing with property rights specifically state what must be done, what must not be done, what can be done, what can not be done. In the civilian tradition injunctive relief is a natural effect of a real right. Injunctive relief is the exceptional effect of a personal right.
The majority cites Poole v. Guste, 261 La. 1110, 262 So.2d 339 (1972). If they read the excellent language in that case, they would quickly conclude why Code of Civil Procedure Article 3601 has no application to the enforcement of these real rights. Mr. Justice Tate there distinguished between the common law remedy *828 of equity, granting injunctive relief where the damage remedy was inadequate, and the civil law procedural remedy of injunction which has always been available to protect possession of property, including rights of servitude. It is stated in Poole v. Guste, supra:
"The relegation of a landowner to compensatory damages instead of to injunctive relief for violation of his property right was permitted, so far as we know, in only the two cited cases concerning very exceptional situations, 27 La.L.Rev. 440 (1967), 22 La.L.Rev. 316 (1962), 3 La.L.Rev. 281-82 (1941), and never so as to deny protection of a servitude due by a servient estate to a dominant estate."
Civil Code Article 667 gives injunctive relief as a matter of right just as do many other Civil Code articles which vest property rights.[*] Injunctive relief is available under Civil Code Article 667 even in the absence of the showing of physical discomfort or present damage whenever the work on the neighboring property constitutes an abuse of the right of ownership. What constitutes an abuse of right of ownership giving rise to injunctive relief is to be decided "* * * with the aid and guidance of the two principles, that the owner must not injure seriously any right of his neighbor, and even in the absence of any right on the part of the neighbor, must not in an unneighborly spirit do that which while of no benefit to himself causes damage to the neighbor." Higgins Oil and Fuel Co. v. Guaranty Oil Co., 145 La. 233, 82 So. 206 (1919).
Our Constitution, Article 1, § 2, enhances the civilian theory for the protection of property rights. Since property rights such as the servitude provided in Civil Code Article 667 do not require a balancing of equities in order to have full injunctive relief, the majority's consideration of Code of Civil Procedure Article 3601 in connection with that Civil Code article was totally inappropriate. Under Civil Code Article 669 where the rights protected are personal, and not real, equitable considerations, such as balancing of interests and measuring irreparable injury, become relevant.
While I am of the opinion that the storing of these chemicals on the property of the defendant constitutes a violation of the servitude under Civil Code Article 667, and is an abuse of the right of ownership by the defendant as to the owner of the estate which plaintiff leases, the owner is not before the court and Civil Code Article 667 is inapplicable to the case which we decide. The party before us is not a proprietor or a possessor of an estate for himself. He is a mere lessee who possesses only for the owner. He may exert only personal rights against third parties, reserving to the owner the privilege and obligation of protecting the real rights, both for himself and those who possess for him.
It is only because the lessee has a personal right under Civil Code Article 669 that I concur rather than dissent from this *829 opinion, and it is only because that right of action flows from Civil Code Article 669 that I would look to Code of Civil Procedure Article 3601 to determine if there was irreparable injury. It is only under these circumstances that I would balance all of the interests, the nature of the damage, the compensating quality of the damages, the utility of the operation, and the conservatory measures which may prevent damage, in determining whether injunction should lie.
I respectfully concur.
TATE, J., joins in the concurrence.
NOTES
[1] Another suit was instituted by Cecil Holley against B. W. S. Corporation, Inc. It was dismissed on appeal on a finding that there was no evidence to show the underground storage of noxious substances by the defendant would interfere with "Holley's Water Well." Writs were not applied for in this case and it is not before us.
[2] We expressly do not decide the circumstances under which an injunction will issue in cases involving interference with conventional servitudes or under a positive legal servitude, such as C.C. 665. See, Poole v. Guste, 261 La. 1110, 262 So.2d 339 (1972).
[*] To further show the inapplicability of Code of Civil, Procedure Article 3601 to a classic Article 667 situation, resort may be had to the Code of Civil Procedure. The very wording of C.C.P. Art. 3601 makes the "irreparable injury" equitable considerations applicable only where other cases for injunctive relief have not been "specifically provided by law." C.C.P. Art. 3663 provides for injunctive relief under the applicable provisions of Chapter 2 of Title 1 of Book 7 to protect or restore possession of immovable property or of real right. The venue article 74, as amended in 1962, Act 92, § 1, provides generally for venue in an action to enjoin the commission of an "offense or quasi offense". It was felt necessary for the purpose of including this particular action for injunctive relief in this venue provision to add, "As used herein, the words `offense or quasi offense' include a nuisance and a violation of Article 667 of the Civil Code."

It is perfectly clear that our procedural law has recognized the absolute right of injunctive relief in the event of an abuse of the right of ownership under Article 667. It has even noted the distinction between an action to enjoin a "nuisance" and an action to enjoin an encroachment upon a real rightthe servitudeprovided in Civil Code Article 667.