310 So.2d 93 (1975)
HERO LANDS COMPANY et al.
v.
TEXACO, INC.
No. 55133.
Supreme Court of Louisiana.
February 24, 1975.
Rehearing Denied April 1, 1975.
*95 Ralph L. Kaskell, Jr., Frederick B. Alexius, Deutsch, Kerrigan & Stiles, New Orleans, for plaintiffs-applicants.
John V. Baus, J. Mort Walker, Jr., Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for defendant-respondent.
SUMMERS, Justice.
Plaintiffs Hero Lands Company and a number of individuals (Hero) allege they are the owners of a tract of land in Orleans Parish comprising 55.5 acres. The Hero tract is contiguous to a tract belonging to Alsue Corporation and its successors, which lies to the southwest of the Hero tract in Plaquemines Parish. The common boundary of the two tracts is the Orleans-Plaquemines Parish line. In March 1970, Texaco acquired an 1870-foot long and 30-foot wide right-of-way easement and servitude on the Alsue Corporation tract. This servitude runs along Alsue's boundary and is bordered by the Hero tract.
According to the petition, late in July 1970 Texaco completed and put into operation a 24-inch high pressure gas pipeline in the servitude adjacent to and within 15 feet of the Hero property. This pipeline does not serve a public purpose which would entitle Texaco to the right of expropriation.
By not keeping its high pressure gas line at least 250 feet from the boundary of the Hero property, the petition asserts, Texaco has created and maintained a continuous dangerous nuisance affecting the Hero property. This is said to result because of the inherent hazards and dangers of such an installation, which are "now well known to the public including those purchasing land for residential or business purposes."
These hazards and dangers, the petition states, have only recently come to the attention of the public, a short time prior to the installation by Texaco of the high pressure gas line. According to the petition, the decision in Michigan Wisconsin Pipeline Co. v. Bonin, 217 So.2d 741 (La. App.1969) recognizes that property value is reduced within a corridor extending 250 feet on both sides of a 30-foot servitude, in the center of which a 30-inch gas pipeline has been constructed.
Further, the Hero property is alleged to be subject to the same hazards and dangers described in the Wall Street Journal in July 1969. There, an article described the circumstances surrounding the explosion of similar pipelines in Gary, Indiana, in June 1969 and in Coshocton, Ohio, in 1968. Also described are the explosion from a low-pressure distribution system in New York in 1969 and the 1965 explosion in Natchitoches, Louisiana, which killed seventeen people.
According to the petition, in the opinion of real estate experts, damage results to lands abutting pipeline rights of way.
Texaco deliberately made this installation despite its knowledge that the pipeline, *96 in close proximity to the Hero property, would constitute a hazard. At the same time, the petition sets forth, Texaco's actions were designed to shift the damage to the Hero property and thus avoid paying Alsue the additional damage it would have incurred if the line had been located deeper within Alsue's property.
Judgment is prayed for in the amount of "at least $30,000" as damage to the Hero property by maintenance of the high pressure gas line.
Texaco raised an exception of no cause of action to this petition which was sustained by the trial judge and affirmed by the Court of Appeal. 296 So.2d 345.
The function of the peremptory exception of no cause of action is to test the legal sufficiency of the petition. The correctness of the well-pleaded allegations of fact is conceded, the issue is whether the face of the petition presents a case which legally entitles the mover to the redress sought. It is the sufficiency of the petition or motion in law which is put at issue by the exception. Rebman v. Reed, 286 So.2d 341 (La.1973); Louisiana State Board of Medical Examiners v. England, 252 La. 1000, 215 So.2d 640 (1968).
If a petition states a cause of action as to any ground or portion of the demand, the exception of no cause of action must be overruled. Louisiana & Arkansas Railway Company v. Goslin, 258 La. 530, 246 So.2d 852 (1971); Burns v. Genovese, 254 La. 237, 223 So.2d 160 (1969); Little v. Haik, 246 La. 121, 163 So.2d 558 (1964); Elliott v. Dupuy, 242 La. 173, 135 So.2d 54 (1961); United Mine Workers v. Arkansas Oak Flooring Co., 238 La. 108, 113 So.2d 899 (1959).
In considering a petition against which an exception of no cause of action has been raised, every reasonable interpretation must be accorded its language in favor of maintaining the sufficiency of the petition and affording the litigant an opportunity to present his evidence. Eschete v. City of New Orleans, 258 La. 133, 245 So.2d 383 (1971); Erath Sugar Co. v. Broussard, 240 La. 949, 125 So.2d 776 (1961). Pleadings must be reasonably construed so as to afford litigants their day in court, to arrive at the truth and to avoid a miscarriage of justice. Budget Plan of Baton Rouge, Inc. v. Talbert, 276 So.2d 297 (La.1973).
The issue presented by this petition is: Does the construction of a hazardous high pressure gas pipeline adjacent to and within fifteen feet of the property line separating contiguous estates give rise to an action for damages caused by this proximity which impairs the market value and full use of the neighboring estate? The question is res novo in this Court. The legal principles set forth in Articles 667, 668 and 2315 of the Civil Code are relied upon to sustain the cause of action.
"Art. 667: Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him."
"Art. 668. Although one be not at liberty to make any work by which his neighbor's buildings may be damaged, yet every one has the liberty of doing on his own ground whatsoever he pleases, although it should occasion some inconvenience to his neighbor.
"Thus he who is not subject to any servitude originating from a particular agreement in that respect, may raise his house as high as he pleases, although by such elevation he should darken the light of his neighbors's [neighbor's] house, because this act occasions only an inconvenience, but not a real damage."
"Art. 2315. Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it. * * *"
*97 A suit for damages instituted as a result of a proprietor's violation of the obligation imposed upon him by Article 667 of the Civil Code is not a tort action in the sense that deliction in its usual connotation is a necessary element. Craig v. Montelepre Realty Co., 252 La. 502, 211 So.2d 627 (1968) (McCaleb, J., concurring).
As expressed in the Article, the principle is a limitation the law imposes upon the rights of proprietors in the use of their property. It is a species of legal servitude in favor of neighboring property, an expression of the principle of sic utere. An activity, then, which causes damage to a neighbor's property obliges the actor to repair the damage, even though his actions are prudent by usual standards. It is not the manner in which the activity is carried on which is significant; it is the fact that the activity causes damage to a neighbor which is relevant. Chaney v. Travelers Insurance Company, 259 La. 1, 249 So.2d 181 (1971). The article expresses, as this Court has often stated, a doctrine of strict liability which does not depend upon deliction. Craig v. Montelepre Realty Co., supra; Gotreaux v. Gary, 232 La. 373, 94 So.2d 293 (1957); Fontenot v. Magnolia Petroleum Co., 227 La. 866, 80 So.2d 845 (1955); Devoke v. Yazoo & M.V.R. Co., 211 La. 729, 30 So.2d 816 (1947).
It does not follow, however, that Article 667 is the only basis upon which neighbors may seek redress for damages caused by proprietors in the vicinity. Article 2315 may also serve as a basis for recovery under appropriate circumstances. But when this authority is relied upon, fault must be proven. Article 2315 contemplates responsibility founded on fault, namely, negligence or intentional misconduct, including abuse of rights. The notion of fault in this context is conduct which violates the standard of reasonableness in the community, an act that a careful and prudent person would not undertake. By contrast, recovery under Article 667 may be granted despite the reasonableness and prudence of the proprietor's conduct, when the work he erects on his estate causes damage to his neighbor. Lombard v. Sewerage & Water Board, 284 So.2d 905 (La.1973).
Recently in Hillard v. Shuff, 260 La. 384, 256 So.2d 127 (1972), this Court restated, as a universally accepted rule of law, the right of the owner of property to conduct thereon any lawful business not per se a nuisance, as long as the business is so conducted that it will not unreasonably inconvenience a neighbor in the reasonable enjoyment of his property. But every business, however lawful, must be conducted with due regard to the rights of others, and no one has a right to erect and maintain a nuisance to the injury of his neighbor even in the pursuit of a lawful trade, or to conduct a business on his own land in such a way as will be injurious or offensive to those residing in the vicinity. See also Devoke v. Yazoo & M.V.R. Co., supra. Article 668 of the Civil Code, in substance, embodies the same principle.
The law, therefore, fixes the responsibility of a proprietor to his neighbor, and Texaco is a proprietor and Hero is its neighbor, within the contemplation of Article 667. Salter v. B.W.S. Corporation, Inc., 290 So.2d 821 (La.1974). Thus, the only issue presented here is whether the allegations of this petition are sufficient in law to establish that the Heros have been damaged by the installation of the pipeline by Texaco in its servitude. If facts are alleged which would, as a matter of law, constitute damage to the Hero property caused by Texaco's installation and maintenance of the line, the petition states a cause of action. For, although Texaco may use its property (servitude) as it sees fit, it can not make any work on it which may deprive Hero of the liberty of enjoying its own, or which may cause damage to Hero. La.Civil Code art. 667.
The facts considered to be true for the purpose of this exception are that the construction of the high pressure line near the *98 boundary of the Hero property created a dangerous nuisance because the works involved inherent hazards and dangers which are well-known to the public and those purchasing land for residential and business purposes. According to reliable evidence, property value is reduced within the 250 foot corridor surrounding the pipeline right of way.
The hazard and danger to the Hero property is illustrated by four specific incidents involving explosions of gas lines. Also, real estate appraisers are of the opinion that such a gas pipeline depreciates the surrounding property. As a result of these facts and circumstances damage has been incurred by the Heros to the extent of $30,000.
While the owners of property are not required to suffer damage as a result of works undertaken on their neighbor's property, the law has decreed that certain inconveniences must be tolerated. Society requires this of its citizens because many lawful uses of property necessarily result in inconveniences to one's neighbors. La. Civil Code art. 668.
But the extent of inconvenience the property owner must tolerate without redress depends upon the circumstances. When the actions or works cease to be inconveniences and become damaging is a question of fact. The problem is one which involves the nature of the intrusion into the neighbor's property, plus the extent or degree of damage. No principle of law confines this damage to physical invasion of the neighbor's premisesan extrinsic injury, as it were. The damage may well be intrinsic in nature, a combination of facts and conditions which, taken together, do not involve a physical invasion but which, under the circumstances, are nevertheless by their nature the very refinement of injury and damage. Salter v. B.W.S. Corporation, Inc., 290 So.2d 821 (La.1974). Compare Hillard v. Shuff, 260 La. 384, 256 So.2d 127 (1972) (Barham, J., dissenting).
Moreover, although there is no allegation of negligence in Texaco's construction or maintenance of the line, there are allegations that the installation was made deliberately and with knowledge of the hazard to their neighbors and to avoid paying what they would be required to pay either under conventional acquisition or expropriation. These allegations may, if adequately supported by convincing evidence, support an action for abuse of rights under Article 2315 of the Civil Code.
For the reasons assigned, the exception of no cause of action is overruled, and the case is remanded to the trial court to be proceeded with in accordance with law.
BARHAM, J., concurs in decree only and assigns reasons.
MARCUS, J., recused.
TATE, J., concurs in the opinion except with regard to the obiter dicta that "fault" under Article 2315 need be distinguished from the fault derived from Article 667.
BARHAM, Justice (concurring).
I concur in the majority's determination that plaintiffs have stated a cause of action, but the majority has, in obiter dicta, made statements regarding the law which are unclear and potentially misleading. I take point with the following statement:
"* * * The article [667] expresses, as this Court has often stated, a doctrine of strict liability which does not depend upon deliction." (Emphasis here and elsewhere supplied.)
The opinion then cites Craig v. Montelepre Realty Co., 252 La. 502, 211 So.2d 627 (1968). Craig v. Montelepre cites Gulf Insurance Co. v. Employers Liability Assur. Corp., 170 So.2d 125, 127 (La.App., 1965), and quotes the following language:
"* * * It is our opinion that the violation of the duty set out by Article *99 667 constitutes `fault' within the meaning of Article 2315, * * *
"As we analyze the cases in which the expression `liability without fault' has been used, we are of the opinion that what was really meant was `liability without negligence.' We are therefore of the opinion that an action based on Civil Code Article 667 prescribes in one year under the provisions of Civil Code Article 3536."
The actual holding of Craig v. Montelepre was that a doctrine of strict liability does not depend upon negligence. The majority pretermitted any holding on whether delictual or contractual prescription applied since any prescription was suspended during continuing acts which caused damage. Justice McCaleb and I concurred in that opinion. I remain of the opinion that the only right arising directly from La.C.C. Art. 667 is a real right which prescribes in ten years. By analogy and extension, the abuse of right theory incorporated in that article can be applied to contractual, delictual, and legal relations other than ownership of property.
I am also of the opinion that a suit for damages based on a violation of La.C.C. Art. 667 may constitute a delictual action based upon fault under Article 2315. It is fault which does not require proof of negligence. See Langlois v. Allied Chemical, 258 La. 1067, 249 So.2d 133 (1971).
The majority also cites Fontenot v. Magnolia Petroleum Co., 227 La. 866, 80 So.2d 845 (1955). This case is an abomination in its treatment of the law. It is true that the opinion states:
"* * * It follows that clearly the plaintiffs in this instance do not bring an action in tort but one that springs from an obligation imposed upon property owners by the operation of law thereby granting to other property owners the maximum enjoyment in the liberty and use of their property. * * *"
However, in that case the defendants were not property owners and one of the plaintiffs was actually the owner of the property upon which the activity occurred that caused damage to the plaintiffs.
The Fontenot case cites a textbook on the law of tort for the proposition that in Louisiana we recognize the theory of "abuse of rights" stating that "* * * every man is bound to use his own property or exercise his rights in relation to privileges granted so that he does not injure his neighbor." The majority here recognizes that Louisiana adopts as a general theory or principle of law that in all areas of legal relationships a legal right can be exercised in such a manner as to constitute a legal abuse. An abusive use of a legal right may be enjoined or may give rise to damages.
The majority admits that the abuse of right theory is a part of fault in Article 2315, but it misleads when it appears to equate abuse of rights with intentional tort. Actually, the majority misstates by omission when it generalizes the concept of "fault" in Article 2315. "Fault" as used there is not limited to negligent acts and intentional misconduct. Indeed, it encompasses conduct which, because of its ultrahazardous nature, may cause harm even when the greatest of care is exercised. Langlois v. Allied Chemical, supra. It does encompass the abuse of right theory. Abuse of right is known throughout the civilian world as something less than intentional misconduct.
Pointedly, a breach of the legal servitude imposed by Article 667 is a delict just as a breach of contract may also be a delict. Actually, whether responsibility under Article 667 involves delicts is immaterial in a suit to enforce the legal servitude provided for in that article. That liability in damages may also be imposed in lieu of and in addition to injunctive relief because of delictual conduct giving rise to damage under Article 667 does not foreclose an action for those damages under Article 2315. Since Louisiana has abandoned the theory of the case rule, one need not choose to name his action when he pleads; he need merely allege facts that support some action. *100 I concur fully with the majority that here a cause of action is alleged. The facts disclose that indeed the legal right to use one's property as one sees fit may have been abused to the extent that it violates the adjoining property owner's right to full enjoyment and use of his property in a balancing of interests. A trial on the merits will disclose the interests of the two property owners in the exercise of their reciprocal rights. Only after a full trial can a court determine whether conduct in the exercise of legal right constitutes an abuse of right as a matter of law.

ON APPLICATION FOR REHEARING
PER CURIAM.
The application for rehearing argues that Jeansonne v. Cox, 233 La. 251, 96 So.2d 557 (1957) is contrary to our holding in this case. Apparently, defendants misunderstand the consequences of our opinion. We have not held that allegations of damage based upon a depreciation of land value because of ordinary constructions and activities on a neighbor's property necessarily state a cause of action. The opinion has held that allegations that the maintenance of an ultra-hazardous construction on defendant's servitude has caused them damage does under the factual allegation state a cause of action. We have remanded for trial on the merits to determine if the proof in support of these allegations entitles plaintiff to recovery of damages for the fault of defendant under the theory of abuse of right as expressed by La.Civil Code arts. 667 and 668.
Application denied.
SUMMERS, J., adheres to the basic opinion. This per curiam adds nothing to what has been said there.
DIXON, J., is of the opinion that this per curiam adds nothing to the majority opinion.
MARCUS, J., recused.