KLEES, Judge.
Plaintiff is the owner of an historic structure, the Luling Mansion, located near the Fair Grounds racetrack, which is owned and operated by defendant, the Fair Grounds Corporation. The trial court awarded plaintiff $4,000 for damage to the ambiance of his historic building caused by lights used to illuminate the racetrack for evening races. Plaintiff has appealed claiming that the amount of damages is insufficient, and further, that the trial court erred in failing to order the defendant to modify or redesign the track lights so as to eliminate the effect on his building. In answer to the appeal, defendant contends that under the law, plaintiff is not entitled to either damages or injunctive relief. We agree, and therefore reverse the trial court’s judgment.
Plaintiff has owned the Luling Mansion since the early 1950’s. Designed by James Gallier, it was originally constructed as a Private Home and eventually sold to be used as the Jockey Club in 1865. In 1934 it was converted into a ten unit apartment building. Plaintiff Welcker currently lives *303 in one of the apartments, uses one for storage, and rents out the other eight. The building has been designated a city landmark by the New Orleans Historic Landmark Commission, and is located within a neighborhood designated a national historic district. The mansion is situated approximately 500 feet from the Fair Grounds track, where thoroughbred horse racing has been conducted for over one hundred years.
In the early 1980’s, the Fair Grounds sought an amendment of the zoning laws to permit it to hold “twilight” races on Friday and Sunday evenings during racing season. The change was initially opposed by the Faubourg St. John Neighborhood Association. As a result of negotiations, a settlement was reached withdrawing opposition to the zoning change on the condition that the track lights used for twilight racing were turned off by 8:30 p.m. and were utilized only two days per week for no more than thirty-six days per year. On September 6, 1984, the New Orleans City Council passed an ordinance allowing for twilight racing under these conditions. In 1988, the ordinance was amended to permit off-track betting at the Fair Grounds clubhouse seven days per week until midnight, which activity would involve the use of some of the parking lot lights but not the infield track lights.
In February 1986, prior to the commencement of off-track betting, plaintiff filed the instant petition claiming he was damaged by the effect of the Fairgrounds lights shining on his property during twilight racing.
The issue was tried in July 1989. On November 13,1989, the trial court rendered judgment in favor of plaintiff in the amount of $4,000. The trial judge found that the track lights distorted the historic, original color of the Luling Mansion at night and that this distortion constituted “real damage” compensable under article 667 of the Louisiana Civil Code, citing Hero Lands v. Texaco, Inc., 310 So.2d 93 (La. 1975). The trial judge specifically noted that he knew of no other instance in which a Louisiana court had considered whether damage to the ambiance of an historic structure is compensable.
In reversing the trial court, we do not express an opinion as to whether damage to the ambiance of an historic structure is compensable under Louisiana law; however, we do find that the law does not support compensation in this particular case.
ART. 667. Limitations on use of property
Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him.
ART. 668. Inconvenience to neighbor
Although one be not at liberty to make any work by which his neighbor’s buildings may be damaged, yet every one has the liberty of doing his own ground whatsoever he pleases, although it should occasion some inconvenience to his neighbor.
Thus he who is not subject to any servitude originating from a particular agreement in that respect, may raise his house as high as he pleases, although by such elevation he should darken the lights of his neighbor’s [neighbor’s] house, because this act occasions only an inconvenience, but not a real damage.
Louisiana Civil Code articles 667 and 668, which must be read in pari mate-ria, state:
Liability under article 667 does not depend upon negligence; however, the jurisprudence has consistently limited such liability to cases involving so-called “ultrahaz-ardous” activities — that is, activities which are inherently dangerous to a neighbor despite the manner (negligent or non-negligent) in which they are carried out. Charia v. Stanley, 359 So.2d 291, 293 (La.App. 4th Cir.1978); Schulingkamp v. Board of Levee Commissioners of Orleans, 425 So.2d 913, 914 (La.App. 4th Cir.1983); Lieber v. Rust, 388 So.2d 836, 842 (La.App. 2d Cir.1980). The Louisiana Supreme Court decision upon which the trial judge principally relied, Hero Lands Co. v. Texaco, *304 Inc., 310 So.2d 93 (La.1975), involved the construction and maintenance of a high-pressure gas pipeline adjacent to plaintiffs property, which the Court found “created a dangerous nuisance because the works involved inherent hazards and dangers which are well-known to the public” Id. at 98. The Supreme Court ultimately decided only that plaintiff had alleged sufficient facts to support a cause of action in both strict liability under Civil Code article 667 and in negligence under article 2315. Id.
In the instant case, the trial judge determined that the Fair Grounds parking lot lights, which are in the nature of street lights used on city roadways, constitute mere inconveniences that must be tolerated under article 668. Without making a finding as to negligence or ultrahazardous activity, he then determined that the infield track lights “(1) would distort the historic, original color of the Luling Mansion at night, (2) do in fact distort the present color of the Luling Mansion, and (3) make it impossible for plaintiffs to restore their structure to its historic character and. color so that it will have a natural color at night.” See Reasons for Judgment, p. 3. Concluding that the effect of these lights had diminished the value of plaintiffs property and caused real damage to the ambiance of the building, the trial court found compensation under article 667 appropriate.
In view of the evidence presented, we find this conclusion to be manifestly erroneous. There is no proof of negligence on the part of the Fair Grounds Corporation. Plaintiff has not shown that defendant has violated any of the conditions set forth in the zoning ordinance or that the track lights were brighter than they needed to be for safe racing. Plaintiffs expert, Mr. Zer-vignon, who opined that there was a 35% “spillage” of light from the infield fixtures, had only examined those fixtures through binoculars.
We also do not find that twilight racing under these conditions constitutes an ultrahazardous activity. More importantly, upon review of the evidence, we find no damage to plaintiffs building that rises above the level of mere inconvenience. The damage focused upon by the trial court was the distortion of the color of the building at night and the fact that this effect had diminished the value of plaintiffs property. Plaintiff does not dispute that these lights are turned on for approximately two hours per day for a maximum of thirty-six days per year. (The evidence showed that twilight racing is actually held on fewer than 36 days per year. Nevertheless, plaintiff testified that it is impossible to paint his structure to reflect its historic natural color because the colors he selected were distorted by the lights. He did not explain why he could not paint the structure to reflect the proper color in the daytime, when the lights are not a factor.
As for economic damage, plaintiffs real estate appraiser testified that the property value of the structure was significantly diminished by the effect of the lights. Defendant’s real estate expert refuted this statement. Plaintiff actually has never attempted to market the property and he testified that he has no intention of selling it, making both these estimates somewhat speculative. Plaintiff is not in the business of showing the house to the public as an historical attraction. The evidence showed that the rents plaintiff receives from the apartments in the building have increased about . 41% since 1983. In light of this evidence, we find any real economic damage to be negligible.
In essence, the evidence showed that the Luling Mansion is lit up by the brightness of the track lights, as other residences in the neighborhood undoubtedly are also, for a maximum of seventy-two hours per year. Under the circumstances, we do not find the effect of the track lights to be more than a mere inconvenience tolerable under Civil Code article 668. We therefore reverse the trial court’s judgment awarding damages to plaintiff, and render judgment in favor of defendant, the Fair Grounds Corporation, dismissing plaintiff’s claim against it.
REVERSED.