811 So.2d 98 (2002)
Yosefa ALOMANG, On Behalf of Herself and All Others Similarly Situated,
v.
FREEPORT-McMORAN, INC., and Freeport-McMoran Copper and Gold, Inc.
No. 2000-CA-2099.
Court of Appeal of Louisiana, Fourth Circuit.
February 20, 2002.
*99 Joseph M. Bruno, David S. Scalia, Anthony D. Irpino, Bruno & Bruno, and Martin E. Regan, Jr., Regan & Associates, New Orleans, LA, for Plaintiffs/Appellants.
John C. Reynolds, M. Richard Schroeder, Virginia W. Gundlach, Alida C. Hainkel, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P., and John S. Keller, New Orleans, LA, for Defendants/Appellees.
Court composed of Judge JOAN BERNARD ARMSTRONG, Judge PATRICIA RIVET MURRAY, and Judge DAVID S. GORBATY.
GORBATY, Judge.
Plaintiffs appeal a judgment dismissing their claims, with prejudice, pursuant to defendants' (Freeport-McMoRan, Inc., and Freeport-McMoRan Copper & Gold, Inc.) Exception of No Cause of Action.[1] For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY:
Yosefa Alomang, a citizen of the Republic of Indonesia, filed this lawsuit on her behalf and others similarly situated, alleging numerous acts and/or omissions by two Louisiana corporations, Freeport-McMoRan, Inc. (FMI), and Freeport-McMoRan Copper & Gold, Inc. (FMC & G).[2] In their first petition, plaintiffs alleged foreign environmental violations, international human rights violations and cultural genocide. Plaintiffs thereafter amended their petition to add allegations that the claims raised in their original petition were the result of decisions made by Freeport-McMoran, Inc., and FMC & G, in their corporate headquarters in New Orleans. The trial court granted defendants' exception of lack of subject matter jurisdiction. This Court reversed and remanded, finding that plaintiffs' allegations also included personal injury damages that were subject to the trial court's subject matter jurisdiction. Alomang v. Freeport-McMoran, Inc., 97-1349 (La.App. 4 Cir. 3/4/98), 718 *100 So.2d 971, writ denied 98-1352 (La.7/2/98), 724 So.2d 734.
Following remand, plaintiffs filed a second amended petition adding four named plaintiffs. Defendants' exception of no right of action was granted because the petition did not establish the right of the named plaintiffs to assert a cause of action for wrongful death. That judgment was not appealed and is now final.
Also following the remand, plaintiffs were granted leave to file an amended petition with instructions from the trial court to "plead facts, as necessary under Louisiana law, to assert claims for personal injury with sufficient detail to place defendants on notice of the facts sought to be proven."
Plaintiffs thereafter filed a third supplemental and amending petition in which they alleged that a contract of work was entered into between Freeport Minerals Company, an Indonesian corporation, and the government of the Republic of Indonesia that obligated Freeport Minerals to the citizens of Indonesia via a stipulation pour autri contained in the contract. The petition further alleged that FMC & G, as the successor to Freeport Minerals, is the alter ego of Freeport Minerals and, is therefore responsible for Freeport Mineral's negligent and/or intentional acts and breaches of the 1967 contract. Defendants filed numerous exceptions, including exceptions of no cause of action and lack of subject matter jurisdiction. The latter exception was withdrawn. Plaintiffs are now before this Court appealing the judgment granting defendants' exception of no cause of action, dismissing plaintiffs' claims, with prejudice.

DISCUSSION:
This Court recently restated the function of an exception of no cause of action and addressed the standards for evaluating the exception:
The function of an exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the pleading. Darville v. Texaco, Inc., 447 So.2d 473 (La.1984). No evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action. La.Code Civ. Proc. art. 931. Therefore, the court reviews the petition and accepts well pleaded allegations of fact as true, and the issue at the trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. Hero Lands Co. v. Texaco, Inc., 310 So.2d 93 (La.1975); Kuebler v. Martin, 578 So.2d 113 (La. 1991).
Guidry v. First Nat'l Bank of Commerce, 98-2383, pp. 2-3 (La.App.3/1/00), 755 So.2d 1033, 1035-36, citing Everything on Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d 1234, 1235 (La.1993). The Court further explained that "the nonmoving party must be given the benefit of all reasonable inferences, and the exceptor has the burden of showing that no cause of action exists on the facts alleged." Guidry, citing City of New Orleans v. Bd. Of Directors of La. State Museum, 98-1170, p. 9 (La.3/2/99), 739 So.2d 748, 755.
Plaintiffs claim that their third amending petition, and all previously filed petitions state several causes of action. Specifically, the latest filed petition states a cause of action against FMC & G under an alter ego theory of liability. Paragraph XI of the Third Supplemental and Amending Petition alleges:
At all times herein, the defendant FREEPORT McMoRan COPPER & GOLD, INC., was and is the principal shareholder (81.28%) and the alter-ego of P.T. FREEPORT INDONESIA *101 COMPANY in that all of the activities of P.T. FREEPORT INDONESIA COMPANY were and are directed solely by FREEPORT McMoRan COPPER & GOLD, INC. from its corporate headquarters within the Parish of Orleans, and as such FREEPORT McMoRan COPPER & GOLD, INC. is responsible for all of the negligent and/or intentional acts of P.T. FREEPORT INDONESIA COMPANY.
Plaintiffs allege that the above statement is not a "mere conclusion of law," but is an allegation of fact sufficient to state a cause of action that FMC & G is liable as the real party causing plaintiffs' injuries. They seek to attach liability to FMC & G by proving that FMC & G directed all of the activities of PTFI. They also seek to "pierce the corporate veil," by proving that FMC & G is the alter ego of PTFI, and, therefore, should be held liable for the acts and/or omissions of PTFI. Plaintiffs argue that they are not making a general statement, but are alleging specific acts and/or omissions sufficient to state a cause of action, including, negligent or intentional arming of the Indonesian military to cause injury to plaintiff, environmental torts, intentional breach of contract, and fraud.
The following circumstances must be proven to support a finding that one corporation is the alter ego of another: 1) commingling of corporate and shareholder funds; 2) failure to follow statutory formalities required for incorporation and for the transaction of corporate affairs; 3) under capitalization; 4) failure to provide separate bank accounts and bookkeeping records; and 5) failure to hold regular shareholder or director meetings. Rock v. ATPIC Trucking Co., Inc., 98-1420, p. 9 (La.App. 1 Cir. 6/25/99), 739 So.2d 874, 880. Plaintiffs' petition does not allege that any of the above-enumerated conditions exist, and, therefore, their petition is woefully deficient. An allegation that one corporation is a subsidiary of another is not sufficient to "pierce the corporate veil" of the parent corporation thereby making it liable for the actions of the subsidiary, in the absence of a showing that the two corporations are not separate entities or that there is fraud or illegal action. Menard v. Associated Royal Crown Bottling Co., 249 So.2d 363, 364 (La.App. 4 Cir. 1971).
At the hearing on the subject exception, plaintiff's counsel argued that fraud was alleged in the petition, although he admitted that "I haven't said the word `fraud,' but that'swhat we've said is thatwhen I say that the superior company, that is the defendant in this case ... is the one who gave the guns to the security forces of the company in the other one, that's what I'm saying." At oral argument, counsel cited American Bank of Welch v. Smith Aviation, Inc., 433 So.2d 750 (La.App. 3 Cir.1983), in support of his proposition that fraud is a limited exception to the rule of non-liability of shareholders.
We agree that American Bank does state that fraud is a limited exception to the general rule; however, the case as a whole does nothing to bolster plaintiffs' position. In addressing plaintiff's argument that the defendant's corporate veil should be pierced thus allowing liability to attach to the individual shareholders, the Third Circuit explained that the general rule is that corporations are distinct legal entities, separate and distinct from the individuals who compose them. Id. at 752. The Court then explained that one exception to the non-liability rule involves situations where fraud or deceit has been practiced on a third party by the shareholder acting through the corporation. Id. A review of plaintiffs' third amended petition does not indicate that it contains allegations *102 of fraud. Louisiana Code of Civil Procedure art. 856 provides that "the circumstances constituting fraud or mistake shall be alleged with particularity." It is not sufficient for plaintiffs' counsel to raise allegations of fraud at the trial court hearing or at oral argument. Plaintiffs' petition is deficient.
Plaintiffs also allege that the trial court erred in dismissing their petition in its entirety, because the exception of no cause of action applied to only the alter ego theory of liability. Therefore, the remaining causes of action, i.e., personal injury from negligent or intentional use, arming and training of military forces to inflict injury upon plaintiff, and fraud in the breach of a stipulation pour autri.
Plaintiffs admit that the contract they claim contains the stipulation pour autri is between Freeport Minerals Company and the Republic of Indonesia. Thus, to find FMC & G liable to the plaintiffs as third party beneficiaries of the contract, plaintiffs must prove that FMC & G is the alter ego of Freeport Minerals Company. As we have already discussed, plaintiffs have not plead with any degree of specificity facts necessary to state a cause of action under the alter ego theory of liability.
In the alternative, plaintiffs argue that should this Court decide that the trial court did not err in granting defendants' exception of no cause of action then we should find that the trial court erred in not allowing plaintiffs to amend their petition. However, as the trial court noted in its reasons for judgment, the Supreme Court has ruled that no discovery would be allowed prior to a ruling on the exception. By plaintiffs' own admission, they cannot ascertain the facts necessary to prove an alter ego theory of liability or fraud without discovery. Further, plaintiffs were ordered by the trial court to amend their petition to "plead facts, as necessary under Louisiana law, to assert claims for personal injury with sufficient detail to place defendants on notice of the facts sought to be proven." They have again failed to do so. Therefore, it would be futile to allow plaintiffs to amend their original petition a fourth time in an attempt to cure the defects.
Accordingly, we affirm the trial court's judgment granting defendant's exception of no cause of action, dismissing plaintiffs' claims.
AFFIRMED.
MURRAY, J., concurs with reasons.
ARMSTRONG, J., dissents with reasons.
MURRAY, J., concurs with reasons.
The plaintiffs have pled only legal conclusions regarding the alter ego theory. Indeed, the sole sentence on which plaintiffs rely to support this legal theory states simply the conclusion that the alter ego directs all of the subsidiary's actions. The plaintiffs have failed to plead any conduct on the defendant's part to support that conclusion.
ARMSTRONG, J., dissents with reasons.
I respectfully dissent. When considering an exception of no cause of action the court must, not only accept all of the factual allegations of the petition as true, but also give the plaintiff the benefit of all reasonable inferences. Guidry v. FNBC, 98-2383 (La.App. 4 Cir 3/1/00), 755 So.2d 1033. I believe that some of the factual allegations of the petition, with reasonable inferences drawn in favor of the plaintiff, do state causes of action against one of the defendants. Therefore, the petition should not be dismissed upon an exception of no cause of action. Everything On Wheels *103 Subaru, Inc. v. Subaru South, Inc., 616 So.2d 1234 (La.1993). See Third Supplemental and Amending Petition for Damages-Class Action, attached hereto as an appendix.
The petition alleges two different contracts of work by two different corporations (each with the Indonesian government), and two different theories of liability of Freeport McMoRan Copper and Gold, Inc. ("FMCG") for the alleged pay for their relocation. That is sufficient, at the pleading stage, to allege the existence of a stipulation pour autrui with the Amungme Tribes as third-party beneficiaries, see Concept Design, Inc. v. J.J. Krebs & sons, Inc., 96-1295 (La. 4 Cir. 3/19/97), 692 So.2d 1203, although, of course, that is still subject to proof as a factual matter (including evidence of the specific terms of the contract). Paragraphs seven, twenty-eight and twenty nine allege FMC breaches of the 1967 Contract's alleged obligation of FMC to the Amungme Tribes people. Paragraph eight alleges that FMCG allegedly "as successor to" FMC "is responsible" for FMC's alleged breaches of the 1967 Contract. This is not an "alter ego" or "piercing the corporate veil" allegation. Instead, it is an allegation of ordinary corporate successor liability such as might result from, for example, a merger. This is sufficient, at the pleading stage, to allege liability of FMCG for the alleged breaches of contract by FMC although, of course, this too is subject to proof as a factual matter (such as evidence as to the nature of the transaction by which FMCG allegedly became the "successor" to FMC). Further, the appellees' brief does not even argue that the petition fails to allege that FMCG is the "successor" of FMC.
Paragraph ten alleges that, in 1991, P.T. Freeport Indonesia Company ("P.T.F.I.") was formed and paragraph twelve alleges that P.T.F.I. entered into a 1991 Contract of Work ("the 1991 Contract") with the Indonesian government. Paragraphs thirteen, fifteen and thirty allege breaches of obligations by P.T.F.I. allegedly owed to third-party beneficiaries. Paragraphs thirty-one and thirty-two allege other wrongs which, based upon their alleged post-1991 dates, were allegedly done by P.T.F.I. Paragraph eleven alleges that FMCG is the "alter ego" of P.T.F.I. so that FMCG is "responsible" for the alleged breaches of contract and other alleged wrongs of P.T.F.I.
It is paragraph eleven's allegation that FMCG is the "alter ego" of P.T.F.I. that the appellees' brief attacks as inadequate and which the majority finds to be inadequate. However, any inadequacy of this paragraph eleven "alter ego" allegation with respect to FMCG and P.T.F.I. is distinct from and has no impact upon the paragraph eight allegation that FMCG is an ordinary corporate "successor" to FMC.
Paragraphs sixteen through twenty-seven appear to allege wrongful conduct of both FMC and P.T.F.I and, thus, there is an adequate allegation as to FMCG's responsibility for such wrongful conduct as successor to FMC. These allegations include allegations of personal injury ("physical bodily injury") by alleged intentional torts and negligence.
Lastly, the petition's allegations of breaches of contract and personal injury need not be made with particularity. Compare La.Code Civ. Proc. art. 856 (fraud or mistake must be alleged with particularity). Also, of course, the appellees have the full range of discovery methods available to learn more about the plaintiffs allegations and the alleged evidence in support of those allegations. Because *104 I believe that the allegations of breach of contract and personal injury by FMC are adequate, and that the allegation of FMCG successor liability for FMC alleged breaches of contract and torts is adequate, I would reverse and remand this case for further proceedings.

APPENDIX

CIVIL DISTRICT COURT FOR THE PARISH OF ORLEANS

STATE OF LOUISIANA

DIV. "H"

YOSEFA ALOMANG, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED

VERSUS

FREEPORT McMoRan, INC., and FREEPORT McMoRan COPPER AND GOLD, INC.

NO: 96-9962

FILED: Nov. 9, 1998
____
DEPUTY CLERK

THIRD SUPPLEMENTAL AND AMENDING PETITION FOR DAMAGES-CLASS ACTION
NOW INTO COURT, through undersigned counsel, comes plaintiff YOSEFA ALOMANG, individually on behalf of herself and all others similarly situated, and who wishes to supplement and amend the original petition, first supplemental and amending petition, and second supplemental and amending petition as follows:

I.
The petition of YOSEFA ALOMANG, individually on behalf of herself and all other similarly situated who are members of the Amungme Tribe and/or the Komoro Tribe, are persons of the age of majority and reside in Irian Jaya[1], a Province of the Republic of Indonesia.

II.
FREEPORT-McMoRan COPPER AND GOLD, INC., is a foreign corporation, admitted to do business in the State of Louisiana, which has located its primary corporate headquarters for its world wide operations in the Parish of Orleans.

III.
Defendants are FREEPORT-McMoRan COPPER AND GOLD, INC., a foreign corporation, admitted to do business in the State of Louisiana, which has located its primary corporate headquarters for its world wide operations in the Parish of Orleans, and which is corporate successor to FREEPORT MINERALS COMPANY, and FREEPORT McMoRAN, INC., a foreign corporation with its primary corporate headquarters in the Parish of Orleans, State of Louisiana.

IV.
On April 5, 1967 FREEPORT MINERALS COMPANY executed a thirty (30) year "Contract of Work" (hereafter the "1967 Contract") with the government of the Republic of Indonesia covering approximately 100 square kilometers to mine a relatively small (50 million tons) but rich copper/gold skarn deposit known as the Erstberg pinnacle, a rock peak located in *105 central Irian Jaya in the Republic of Indonesia.

V.
In the 1967 Contract, FREEPORT MINERALS obligated itself to pay to third party beneficiaries of the contract, the Amungme Tribes people, `reasonable compensation for dwellings to local inhabitants and the cost of their resettlement'.

VI.
Said promise of FREEPORT MINERALS as set forth above is a stipulation for the benefit of a third party, or "stipulation pour autrui" in accordance with the Louisiana Code Of Civil Procedure Articles 1978, et seq.

VII.
Soon after the 1967 Contract was signed FREEPORT MINERALS began to establish camp sites on the southern coast of the island near Amamapare and up at the Erstberg near Tembagapura. As the mine infrastructure expanded and the township of Tembagapura was constructed, many many Amungme Tribes people including but not limited to YOSEFA ALOMANG were relocated without having been paid by FREEPORT MINERALS COMPANY the reasonable compensation for dwellings or the cost of their resettlement in violation of the "stipulation pour autrui".

VIII.
FREEPORT-McMoRan COPPER AND GOLD, INC., as successor to FREEPORT MINERALS COMPANY is responsible for FREEPORT MINERALS COMPANY's negligent and/or intentional acts and breaches of the 1967 Contract.

IX.
In 1988 FREEPORT MINERALS COMPANY by and through its subsidiaries and/or affiliates discovered within the Jayawijayo Mountain, near the Erstberg Mine, one of the most significant ore finds in mining history, an enormous porphyry copper/gold deposit now known as the Grasberg Mine.

X.
On December 17, 1991, FREEPORT McMoRan COPPER AND GOLD, INC., the corporate successor of FREEPORT MINERALS COMPANY, established P.T. FREEPORT INDONESIA COMPANY, a juridical body incorporated in Indonesia, the shares of the common stock of which are owned by FREEPORT McMoRan COPPER AND GOLD, INC., and the Government of the Republic of Indonesia.

XI.
At all times herein, the defendant FREEPORT McMoRan COPPER AND GOLD, INC., was and is the principal shareholder (81.28%) and the alter-ego of P.T. FREEPORT INDONESIA COMPANY in that all of the activities of P.T. FREEPORT INDONESIA COMPANY were and are directed solely by FREEPORT McMoRan COPPER AND GOLD, INC. from its corporate headquarters within the Parish of Orleans, and as such FREEPORT McMoRan COPPER AND GOLD, INC. is responsible for all of the negligent and/or intentional acts of P.T. FREEPORT INDONESIA COMPANY.

XII.
On December 26, 1991, P.T. FREEPORT INDONESIA COMPANY, as the successor to FREEPORT MINERALS COMPANY, entered into a Contract of Work, (hereafter the 1991 Contract) with *106 the Government of the Republic of Indonesia, the intent of which was to greatly expand the geographic area wherein mining rights were originally granted in the 1967 Contract to two million six hundred ten thousand one hundred and eighty two (2,610,182) hectares (4.8 million acres).

XIII.
The 1991 Contract provided in part that: Article 2, Clause 3 provides in part:
"The company shall have sole control and management of all its activities under this agreement and shall have full responsibility therefor and shall all risk with respect thereto in accordance with the terms and conditions of this agreement."
Article 18, Clause 3 provides in part:
"The Government shall assist the Company in arrangements for any necessary resettlement of local inhabitants whose resettlement from any part of the Contract Area Block B or the Project Area is necessary and the Company shall pay for the resettlement and give reasonable compensation for any dwelling, privately owned lands (including such landownership based on any Indonesian customs or customary laws, generally or locally applicable) or other improvements in existence on any such parts which are taken or damaged by the Company in connection with its activities under this Agreement."
Petitioners aver that they are Third Party Beneficiaries, stipulation pour autrui, of the 1991 Contract.

XIV.
Said promise of P.T. FREEPORT INDONESIA COMPANY as set forth above is a stipulation for the benefit of a third party, or "stipulation pour autrui" in accordance with the Louisiana Code Of Civil Procedure Articles 1978, et seq.

XV.
The defendants have failed to honor their agreement, the "stipulation pour autrui" per the 1991 Contract to resettle and relocate the local inhabitants including but not limited to YOSEFA ALOMANG and to pay reasonable compensation for dwellings, privately owned lands, including such landownership based on any Indonesian customs or customary laws, and compensation for other improvements taken or damaged by the defendants in connection with its activities under the contract.

XVI.
The defendants have utilized the Indonesian military and police forces, and in so doing have housed, clothed, fed, and transported said forces, and further have armed said forces with AK-47 assault weapons and other sophisticated military equipment and weaponry, all for the purpose of utilizing said forces on behalf of, in conjunction with, and at the direction of the defendants in aiding in the security of defendants' mining operations, which activities of the defendants have damaged the Amungme and Kamora Tribes people, including but not limited to your petitioner YOSEFA ALOMANG said damages to include but are not limited to fear of bodily injury and/or death at the hands of improperly trained and/or improperly supervised, and heavily armed security forces.

XVII.
The defendants have provided AK-47 assault weapons and other sophisticated military equipment and weaponry to military, police and civilian Indonesians hired to work as the defendants security forces to be utilized on behalf of, in conjunction *107 with, and at the direction of the defendants even though said forces lack of knowledge and training as to safe and proper methods of utilizing said equipment or of the safe and proper methods of providing security for the mining operations. Said failure to properly train in the safe and proper methods and procedures of said heavily armed forces have damaged the Amungme and Kamora Tribes people, including but not limited to your petitioner YOSEFA ALOMANG. Said damages to include but are not limited to fear of bodily injury and/or death at the hands of improperly trained and heavily armed security forces.

XVIII.
The defendants have failed to properly train their security forces, as well as the Indonesian military and police forces, all of which are and have been utilized on behalf of, in conjunction with, and under the direction of the defendants for mine operations security which failure to properly train has damaged the Amungme and Kamora Tribes people, including but not limited to your petitioner YOSEFA ALOMANG said damages to include but are not limited to fear of bodily injury and/or death at the hands of improperly trained and heavily armed security forces.

XIX.
In conjunction with and as a result of the defendants' mining activities, approximately 160,000 tons of `tailings' (finely ground mine wastes including chemical precipitates) have been and are deposited daily into the Ajkwa River system resulting in heavy metal pollution therein causing damage to your petitioner YOSEFA ALOMANG said damage including but not limited to fear of bodily injury and/or disease and/or death from exposure to said pollutants, and further causing the destruction of a 130 square kilometer rainforest.

XX.
The polluting of the river system and destruction of the rainforest by the deposition of tailings and their resultant chemical precipitates have resulted in exposure of petitioners to said contaminants thereby causing petitioner YOSEFA ALOMANG and others physical bodily injury, inconvenience, fear, fright, and emotional distress.

XXI.
The tailings and their resultant chemical precipitants are hazardous and toxic substances within the meaning of La. C.C. article 2315.3

XXII.
In operating the Indonesian mining concessions, defendants have caused the release of toxic and hazardous substances including but not limited to PCB's, a "Class B carcinogen", into the ecosystem including the groundwater, by improperly disposing of power transformers throughout the operation of the Erstberg and Grastberg facilities, thereby causing damage to your petitioner YOSEFA ALOMANG said damage including but not limited to fear of bodily injury and/or disease and/or death from exposure to said PCB and carcinogens.

XXIII.
The PCB's as set forth in the preceding paragraph are toxic and hazardous substances within the meaning of La. C.C. article 2315.3

XXIV.
Said contaminated water has been utilized and consumed by Your Petitioner YOSEFA ALOMANG and others, and *108 said persons have been otherwise exposed to said contaminated ground water, and that said utilization, consumption and exposure has caused plaintiffs physical bodily injury, inconvenience, fear, fright, and emotional distress.

XXV.
As a result of the defendants mining operations in Irian Jaya, the surrounding aquifer and ecosystem have been contaminated with toxic and hazardous heavy metals, included but not limited to mercury, copper, sulphuric acid, and sodium cyanide, thereby causing damage to your petitioner YOSEFA ALOMANG said damage including but not limited to fear of bodily injury and/or disease and/or death from exposure to said toxic and hazardous heavy metals.

XXVI.
The toxic and hazardous heavy metals, including but not limited to mercury, copper, sulphuric acid, and sodium cyanide, as set forth in the preceding paragraph are hazardous and toxic substances within the meaning of La. C.C. article 2315.3

XXVII.
Water from said contaminated aquifer and ecosystem has been utilized and consumed by Your Petitioner YOSEFA ALOMANG and others, and said persons have been otherwise exposed to said contaminated aquifer and ecosystem, and said utilization, consumption and exposure has caused plaintiffs physical bodily injury, inconvenience, fear, fright, and emotional distress.

XXVIII.
In 1977 your Petitioner YOSEFA ALOMANG was forced by the defendants from her home in Tamika without reparation or suitable compensation, and journeyed back into the Tsinga Valley during which journey your petitioner's 4 year old child died of starvation.

XXIX.
In 1985 your Petitioner YOSEFA ALOMANG returned to Tamika from the Tsinga Valley and again was forced from her property without reparation or suitable compensation by the defendants' utilizing heavy construction equipment for the purpose of building and constructing defendants' employee housing.

XXX.
In 1992 Your Petitioner YOSEFA ALOMANG was again forced from her land without reparation or suitable compensation by the defendants, this time for the purpose of the defendant constructing a hotel and airport.

XXXI.
In late December of 1995 Your Petitioner YOSEFA ALOMANG and others were taken from their homes by the military at the behest of the defendants' security and transported in defendant's vehicles and placed in and detained for several days in defendants' containers, said incident causing her bodily harm as well as fear of bodily harm and/or death.

XXXII.
Between April and July of 1998 Your Petitioner, YOSEFA ALOMANG's movements have been restricted outside of Tamika by the direct threats of defendants' security who came to Your Petitioner's home and threatened her with bodily harm should she travel to the United States.

XXXIII.
The defendants' mining operations facility and its contents, components, and appurtenances *109 were at all times relevant hereto in the custody and garde of the defendants and as a result the defendants are strictly liable under the provisions of La. C.C. art. 2317 for the damages caused by the toxic and hazardous substances.

XXXIV.
Alternatively, and in addition, the releases of toxic and/ or hazardous substances were caused by the negligence of the defendants in the following particulars, but not necessarily limited thereto:
1. In failing to use proper workmanship in the maintenance and repair and operation of the mining facility, to assure safety for the tribes people in the storage and handling of the hazardous and/or toxic substances at all times;
2. In failing to use proper workmanship and care in working in the area of the releases of toxic and/or hazardous substances;
3. In failing to properly inspect said mining facility to assure that it was fit for its intended purpose;
4. In acting in a careless and negligent manner without due regard for the safety of others;
5. Such other acts of negligence and omissions as will be shown at the trial of this matter.
All of which the aforesaid acts of negligence are in violation of the laws of the State of Louisiana and the ordinances of the Parish of Orleans which are pleaded herein as if copied in extenso

XXXV.
The actions of the defendants were willful and a violation of applicable safety standards and statutes in their failure to do proper testing and inspection and safety procedures at the mining facility and its appurtenances, and, in their failure to properly train their security forces and others utilized by the defendants for security purposes, and as a result, the defendant's conduct constituted negligence per se.

XXXVI.
In addition to the above stated negligence, and in the alternative thereto, the injuries and damages suffered by Your Petitioner and others was caused by acts or omissions of the defendants, which acts or omissions may be beyond proof by the plaintiff herein, but which were within the knowledge and control of the defendants, there being no other possible conclusion than that the damages and injuries caused as a result of the negligence of the defendants, and that furthermore, said damages and injuries could not have occurred had the defendants exercised the high degree of care imposed on them in the handling and storage of hazardous substances, and in the arming and training of security forces for use at as security at their mining facilities and your petitioner therefore plead the doctrine of res ipsa loquitur.

XXXVII.
Further in the alternative, and in any event, your petitioner avers, upon information and belief, that the defendants were the owner of the property or had the garde of the property on which the releases of toxic and hazardous substances occurred and is absolutely liable to your petitioner under the provisions of La.C.C. Art. 667 and all other applicable provisions of Louisiana law for the damage resulting from the use of its premises in a manner by which harm to the vicinage has occurred.

*110 XXXVIII.
Those persons who suffered compensatory damages from the defendants toxic and or hazardous substances are also entitled to recover exemplary damages from defendants under the provisions of La.C.C. Art. 2315.3 due to defendants' wanton and reckless disregard for the public safety in the storage, handling or transportation of hazardous and/or toxic substances.

XXXIX.
Upon information and belief, it is alleged that your petitioner and other persons in the vicinity of the defendants mining operations have sustained damages including, but not limited to, personal, mental, emotional and economic damages and/or inconvenience.

XL.
All of the above caused considerable fear, anguish, discomfort and inconvenience of the tribes people on the Amungme Tribe or the Komoro Tribe residing in Irian Jaya, the Republic of Indonesia.

XLI.
Petitioner alleges that the class consists of all Amungme Tribe or the Komoro Tribe who reside in Irian Jaya, a Province of the Republic of Indonesia sustained personal, mental, emotional and economic damages and/or inconvenience as a result of the aforementioned acts and/or failures to act of the defendants..

XLII.
This action is appropriate for determination through the Louisiana Class Action Procedure (La.C.C.P. art. 591, et seq.) for the following reasons:
1. The large number of potential claimants presents a level of numerosity better handled through the class action procedure as opposed to a mass joinder of individual claims;
2. The common issues of law and fact pertaining to the determination of fault and the liability for compensatory and exemplary damages predominate over the individual issues of quantum;
3. The determination of fault and the basis for assessment of compensatory and exemplary damages may be made in the class action under La.C.C.P. art 593.1(C)(1),(2) and (3) without the necessity of proof at that time as to the amount of those damages, thereby establishing the guidelines for settlement and/or subsequent trials in individual cases if necessary;
4. Petitioner herein has sustained damages of the nature described herein above and is a suitable representative of the class;
5. The class representative herein is represented by skilled attorneys who are experienced in the handling of mass tort class action litigation and who may be expected to handle this action in an expeditious and economical manner to the best interest of all members of the class;
6. The Louisiana Class Action Procedure affords a superior vehicle for the efficient disposition of the issues and claims herein presented.
WHEREFORE, your petitioner prays:
1. That the defendants be served with a copy of this Third Supplemental and Amending Petition, the Original Petition, the First Supplemental and Amending Petition, and Second Supplemental and Amending Petition, and cited to appear and answer same;
*111 2. That after due proceedings had, that this action be certified as a class action pursuant to the provisions of La.C.C.P. art 591 et seq., in the respects alleged herein above, for the purposes of determining the common issues of liability for compensatory and exemplary damages and the basis for assessment of exemplary damages, if any;
3. That upon certification of the class action, the Court call for the formulation of a suitable management plan pursuant to La.C.C.P. 593.1(C);
4. That after due proceedings had and a trial by jury, there be a judgment in this matter in favor of the plaintiffs and against the defendants, FREEPORT McMoRan, INC., and FREEPORT McMoRan COPPER AND GOLD, INC. declaring that said defendants are liable, in solido, to Your Petitioner and all members of the class for compensatory and exemplary damages resulting from the aforementioned acts and/or failures to act of the defendants, and further decreeing the basis on which exemplary damages may be assessed against the defendants held liable therefore in this proceeding;
5. That the rights of Your Petitioner and all members of the class to establish their entitlement to compensatory and exemplary damages, and the amounts thereof, be reserved for determination in their individual actions when appropriate;
6. That plaintiffs recover their costs for the prosecution of this class action, and for interest on all damages from the date of judicial demand until paid.
Respectfully submitted:
BRUNO & BRUNO
/s/ Bruno
JOSEPH M. BRUNO, #3604
DAVID S. SCALIA, #21369
ANTHONY D. IRPINO #24727
825 Baronne Street
New Orleans, LA 70112
Telephone: (504) 525-1335
FAX: (504) 581-1493
Counsel for Plaintiffs
and
REGAN & BOSHEA, PLC
/s/ Martin E. Regan #11153
2125 St. Charles Avenue
New Orleans, Louisiana 70130
(504) 522-7260
Counsel for plaintiffs
Signed w/ permission
PLEASE SERVE:
DEFENDANTS
FREEPORT McMoRan, INC., and
FREEPORT McMoRan COPPER AND
GOLD, INC.
Through their counsel of record:
John C. Reynolds, Esq.
Jones Walker Waechter Poitevent Carrere
& Denegre, LLP
Place St. Charles
201 St. Charles Avenue
New Orleans, Louisiana XXXXX-XXXX
NOTES
[1] Defendants' Motion to Dismiss for Forum Non Conveniens and Motion to Dismiss and Strike "Amended Prayer of Plaintiffs' Third Supplemental and Amending Petition" were rendered moot by the ruling on the Exception of No Cause of Action.
[2] A similar lawsuit was filed in federal court. It was dismissed, with prejudice, pursuant to defendants' Motion to Strike Third Amended Complaint and to Dismiss with Prejudice.
[1] The island on which Irian Jaya is located is called Irian (New Guinea). The island is divided into two parts: the western part, which belongs to the Republic of Indonesia and is known as Irian Jaya, and the eastern part, which is the sovereign nation of Papua New Guinea (PNG).